

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00450-CV

**REYNOLDS ENERGY TRANSPORT, LLC** and Reynolds Transportation, Inc.,
Appellants

v.

**PLAINS MARKETING, L.P.**; Plains All American Pipeline, L.P.; and Plains Pipeline, L.P.,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CI-11568
Honorable Antonia Arteaga, Judge Presiding[1]

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice (not participating)
                Lori I. Valenzuela, Justice

Delivered and Filed: June 28, 2024

REVERSED AND RENDERED

This appeal involves a motion for sanctions by Plains Marketing, L.P.; Plains All American Pipeline, L.P.; and Plains Pipeline, L.P. against Reynolds Energy Transport, LLC and Reynolds Transportation, Inc. The movants sought sanctions under Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code. After a hearing on the motion, the trial court assessed monetary sanctions of $482,895.92 against Reynolds Energy and

---

[1] The Honorable Larry Noll heard Appellees' Motion for Sanctions; the Honorable John Gabriel heard Appellants' Motion for Reconsideration and for New Trial.

Reynolds Transportation for documents signed by their attorneys, Ronald L. Bair and Marc B. Johnson, both with the law firm of BairHilty, P.C.

Because Appellees failed to overcome the presumption that Appellants acted in good faith, the trial court abused its discretion in awarding monetary sanctions. We reverse the trial court's sanctions order and render judgment that Appellees take nothing on their motion for sanctions.

**BACKGROUND**

## A. Personal Injury Incident

Appellees Plains Marketing, L.P.; Plains All American Pipeline, L.P.; and Plains Pipeline, L.P. (collectively Plains or Appellees) operated a crude oil delivery station, known as North Owens. Plains Marketing owned the station, but it leased the premises. Plains Marketing paid trucking companies to haul crude oil from North Owens to other locations. The North Owens station had two Lease Automatic Custody Transfer (LACT)[2] systems.

Dianna Marable, who was employed by Timekeepers Company, was assigned to guard duty at the North Owens station. One of her duties was to record data on trucks being loaded with crude oil at North Owens.

Shortly before midnight on December 20, 2018, John Hayes, a driver for Reynolds Transportation, drove his tractor and tank trailer into the North Owens station to use LACT 2. As Hayes began to fill his trailer's tank, he heard a "pop-off" of the tank's relief valve. He immediately stopped filling the tank to troubleshoot the problem. After checking the hoses, he resumed filling the tank, but another pop-off occurred, and he again stopped filling the tank. The second pop-off meant that, although the tank's valves and hoses were open, the vapor was not being accepted into the Plains vapor recovery system.

---

[2] A LACT unit is used to transfer liquid hydrocarbons from production output into trucks, pipelines, and storage facilities; it also measures the amount of liquid hydrocarbons transferred.

After the second pop-off, Dianna came out of the guard house to inquire about the noise. Hayes told her he heard air coming out of his trailer. He also told her he was shutting down his truck's systems, and he was looking into the problem.

While Hayes was under the belly of the trailer attempting to determine where the pop-off noise came from, Dianna remained standing next to the trailer. Hayes heard a "woosh," turned his head, and saw Dianna lying on the ground inside the railing of the LACT 2 and bleeding from her head.

No one saw how Dianna fell. Plains Marketing's safety manager reported that Dianna fell when she tripped over a guardrail at the site. As a result of the fall, Dianna suffered a brain injury and a broken neck.

## B. Procedural History

### 1. Dianna's Original Petition

On January 10, 2019, Dianna's son and next friend, Andrew Marvin Stock, filed a personal injury lawsuit against Reynolds Energy and Plains Marketing. Against Reynolds Energy, Dianna alleged recovery under the doctrine of respondeat superior, negligence, and gross negligence. Against Plains Marketing, she alleged negligence, premises liability, and gross negligence.

### 2. Defendants Answer

Both Reynolds Energy and Plains Marketing timely answered. Bair made an appearance on behalf of Reynolds Energy.

### 3. Dianna's First Amended Petition

On October 22, 2019, Dianna filed a first amended petition adding Hayes as a defendant. She sued Hayes for negligence and gross negligence. She added the following:

> Upon information and belief, Defendant Reynolds intends to allege that Defendant Plains Marketing, L.P. is at fault for this incident for failing to ensure the location was safe. Specifically, it is believed that Defendant Reynolds intends to allege that

Defendant Plains' failure to properly grade and maintain the surface of the location contributed to Plaintiff's fall and resultant injuries.

She further alleged the following:

Upon information and belief, prior to this incident, Defendant Plains was aware that the grading on its location, and specifically in the area where this incident occurred, was improper and unsafe. Defendant Plains knew, or should have known this information, because other contractors and/or Plains employees on location had reported such unsafe conditions to Plains. Furthermore, such unsafe conditions were discoverable by Defendant Plains if it had exercised its rights and obligations to inspect the premises to ensure it was safe.

### 4. *Charles Mills's Deposition*

On January 8, 2020, Charles Mills was deposed. Mills, like Dianna, was employed by Timekeepers as a guard at the North Owens station. He was also Dianna's boyfriend and ex-husband. He did not witness Dianna's fall, but he testified about the loading operations at the North Owens station and the guards' role in those operations.

### 5. *Reynolds Energy's Answers to Interrogatory No. 3*

On January 16, 2020, Reynolds Energy served Dianna with its amended answers to her first discovery requests. In her Interrogatory No. 3, Dianna had asked for Reynolds Energy's theories of liability as follows:

If you contend that someone else's conduct or some condition or event not under your control was a cause of the incident which forms the subject matter of this litigation, please identify the other person, event, or condition, and describe in detail the activity or condition involved and how it caused the incident.

Reynolds Energy's response included its original and amended answers.

**Answer:** Defendant objects to the request as it seeks information not currently available. As Defendant was not present at the time of the incident and therefore not able to give a firsthand response on the actions of the parties present at the time of the incident but may supplement as discovery progresses and more details become known.

**Amended Answer:** Defendant objects to the request as it seeks information not currently available. As Defendant was not present at the time of the incident and therefore not able to give a firsthand response on the actions of the parties present

at the time of the incident. Subject to and without waiving the objections, Plaintiff placed herself in a position she was not qualified for and had no reason to be in at the time of the incident. Defendant contends a failure, malfunction or design defect in Plains Marketing's equipment, a defect in the design and installation of the guard rails at issue and the failure to properly instruct and warn Ms. Marable and others to avoid entry in and around the loading area and monitor Ms. Marable and others to ensure compliance with these warnings caused or contributed to the incident at issue. Defendant reserves the right to amend this answer as discovery is ongoing.

The amended discovery responses were signed by Bair.

### 6. Rule 11 Agreement

On January 22, 2020, Dianna and Reynolds Energy entered into a Rule 11 agreement. Part of that agreement addressed Dianna's motion to disclose Reynolds Energy's theories of liability as set forth in Reynolds Energy's amended answer to Dianna's Interrogatory No. 3. In the agreement, the parties agreed as follows:

[Reynolds Energy] will amend ROG No. 3 to indicate information related to our liability theory against Plains will be supplemented when received. Currently, no more specific information exists which could be supplemented at this time. Nothing is being withheld on the basis of the objection.

The Rule 11 agreement was signed by Marc Johnson.

### 7. Hayes's First Deposition

On January 28, 2020, John Hayes, Reynolds Energy's driver, was deposed. He testified he believed that a potential cause of Dianna's fall was that mud, water, or gunk had built up inside the vent lines which caused his truck to pop-off. He agreed that when Dianna fell, the ground was not muddy. He also agreed he did not see Dianna fall, but he saw her laying inside the railing of LACT 2.

### 8. Motion for Spoliation

On February 7, 2020, Dianna filed a motion for a finding of evidence spoliation against Reynolds Energy concerning the tractor trailer operated by Hayes on the day of her accident. Dianna alleged that, although Reynolds Energy's duty to preserve the tractor trailer was triggered

immediately after the accident, Reynolds Energy failed to do so and instead produced an entirely different tractor and a modified tank trailer for inspection.

Dianna sought discovery sanctions under Rule 215.2(b) of the Texas Rules of Civil Procedure. Later, Plains Marketing joined Dianna's motion.[3]

### 9. *Plains Marketing's Answer to Cross-Claim*

On February 2, 2020, Plains Marketing filed its original answer to Reynolds Energy and Hayes's cross-claim. The record before us, however, does not include a cross-action filed by either Reynolds Energy or Hayes before February 2, 2020.

### 10. *Reynolds Energy, Hayes's Second Amended Answer*

On March 3, 2020, Reynolds Energy and Hayes filed their second amended answer. The answer was signed by Bair. In that answer, the defendants raised the following defenses: (1) comparative fault against Dianna, (2) new and independent cause, (3) pre-existing or subsequent injuries and conditions, (4) sole proximate cause, (5) failure to mitigate damages, (6) right to amend their answer following further discovery, (7) no duty, (8) the accident did not occur in the manner Dianna alleged, (9) contribution if Dianna settled with other persons sued by Dianna, (11) paid and incurred, (12) failure to mitigate healthcare expenses, and (13) taxable wages.

### 11. *Motion on Hayes's First Errata Sheet*

On April 7, 2020, Dianna filed a motion concerning Hayes's corrections to his January 28, 2020 deposition testimony that he made on an errata sheet. In this motion, Dianna alleged Hayes made "extremely important and highly suspect changes to his deposition testimony." Hayes's errata sheet revisions included changes to his testimony on the whereabouts of photographs he

---

[3] Eventually, Judge David Canales granted the motion and struck Reynolds Energy's defenses asserted against Dianna but allowed it to maintain its contributory negligence defense against Plains Marketing.

took with his cellphone on the night of the accident and the content of his driver's logs.  Later, Plains Marketing joined in Dianna's motion.

12.     *Motion to Strike Liability Theories Not Disclosed*

On April 7, 2020, Dianna filed a motion to strike liability theories not disclosed.  She sought sanctions against Reynolds Energy for discovery abuse.

She contended that in preparation for Hayes's January 28, 2020 deposition, she made a good faith effort to inquire about Reynolds Energy's theories of liability through Interrogatory No. 3.  When Reynolds Energy's attorney confirmed that it currently had no specific information on the allegations set forth in its previously amended answer to Interrogatory No. 3, they entered into the January 22, 2020 Rule 11 agreement.

In her April 7, 2020 motion, Dianna argued that when Hayes was deposed, he brought up a theory of liability that was not previously disclosed.  As a result, she was prevented from investigating that theory of liability and adequately examining Hayes when he was deposed.

Later, Plains Marketing joined in Dianna's motion.

13.     *Plains Marketing's Motion for No-Evidence Summary Judgment*

On April 27, 2020, Plains Marketing filed a motion for no-evidence summary judgment against Dianna's claims.

14.     *Reynolds Energy, Hayes's Cross-Action*

Also on April 27, 2020, Reynolds Energy and Hayes filed a cross-action against Plains Marketing for contribution under "Chapters 32 and 33 of the Texas Civil Practice[] and Remedies Code, the Doctrine of Comparative Causation, and all applicable statutory and common law."  Marc Johnson signed the cross-action.

*15.    Reynolds Energy's Third Amended Answers to Interrogatory No. 3*

On April 28, 2020, Reynolds Energy served its third amended answers to Dianna's Interrogatory No. 3 (which asked for the other responsible parties or conditions that caused Dianna's accident). Reserving its right to supplement once the Plains defendants produced their employees for depositions, in that amended response, Reynolds Energy included nine theories of liability against Plains Marketing and its related companies. Bair signed the amended discovery.

*16.    Dianna's Second Amended Petition*

On May 29, 2020, Dianna filed a second amended petition. She added the following as defendants: Reynolds Transportation, Inc.; Plains All American Pipeline, L.P.; Plains Pipeline, L.P.; Vapor Point, LLC; John E. Meador Construction, Inc.; and Quality Pipeline Construction, LLC.

Dianna then explained why she was suing these defendants:

> Because Defendants Reynolds and Hayes have elected to pursue a vague scorched earth defense in this case, Plaintiff is left with no choice but to amend this lawsuit and bring into this litigation the above entities and individuals that Defendant Reynolds alleges, either directly or indirectly, are liable to Plaintiff. Out of an abundance of caution, Plaintiff hereby incorporates by reference into this Second Amended Pleading, and any future amended pleadings, any allegation, evidence, claims or evidence advanced by Defendant Reynolds against any other Defendant in this case.

*17.    Reynolds Energy's Response to Plains Marketing's No-Evidence Motion*

On June 9, 2020, Reynolds Energy filed a response to Plains Marketing's no-evidence motion for summary judgment. In its response, Reynolds Energy argued that discovery had not concluded, depositions of Plains Marketing's employees and others were needed given that cross-plaintiff Reynolds Energy asserted additional allegations against Plains Marketing, and Reynolds Energy had included additional allegations against Plains Marketing in its response to plaintiff's Interrogatory No. 3.

In the alternative, Reynolds Energy argued that a genuine issue of material fact existed based on Hayes's depositions testimony, on the affidavit of its expert, Richard "Rich" A. Gehse, and on the affidavit of its attorney, Marc Johnson, who testified that discovery was ongoing, and that Plains had refused to present it employees for depositions. All three documents were attached to Reynolds Energy's response opposing Plains Marketing's summary judgment. The response was signed by Bair.

      a.     <u>Hayes's Depositions Testimony</u>

Reynolds Energy pointed to Hayes's depositions testimony that Plains Marketing's vapor hose was defective, it was left in the mud and would become clogged with mud and dirt, Plains failed to provide tips for the hose to prevent it from being clogged, Plains failed to properly maintain the vapor recovery system, and there was a railing where Dianna fell.

      b.     <u>Gehse's Affidavit</u>

Reynolds Energy provided an affidavit from Richard A. Gehse dated June 9, 2020. It stated in part as follows:

> This affidavit is based on preliminary information known and available to me at this time through my investigation and through documents and other materials reviewed by me. I reserve the right to supplement or amend this affidavit, or the statements and preliminary opinions made herein, based on additional information, including information that may become available from witnesses and other parties as this dispute proceeds.

The crux of Gehse's opinion was that Plains Marketing, who controlled the premises of the vapor recovery and railing systems, failed to properly maintain the premises. Gehse identified the following contributing factors: (1) improper site grading, (2) the vapor recovery system hoses did not have a hanger mechanism to store the hose, (3) the vapor recovery system's mechanisms were not designed to prevent or remove solid material from the system components, and (4) the rail system around the loading station was twenty inches below the required height.

c.       Marc Johnson's Affidavit

Reynolds Energy also included an affidavit from Johnson. In his affidavit, Johnson testified that discovery was ongoing and that Plains Marketing had not produced its employees for depositions despite requests made to its attorney.

18.      *Plains Marketing's Motion for Leave to Amend No-Evidence Motion*

On June 10, 2020, Plains Marketing filed a motion for leave to amend its no-evidence motion for summary judgment, which was later granted. In its amended no-evidence motion, Plains Marketing asserted there was no evidence to support Reynolds Energy's contentions as set forth in its response to Interrogatory No. 3.

19.      *Dianna's Response to Plains Marketing's No-Evidence Motion*

Also on June 10, 2020, Dianna filed her response to Plains Marketing's no-evidence motion for summary judgment. She announced that she was not opposed to that motion because, among other things, there was no evidence that Plains Marketing contributed to Dianna's accident, and it bore "no possible causal responsibility as a matter of law."

20.      *Reynolds Energy's Response to Plains Marketing's Motion for Leave to Amend*

On June 12, 2020, Reynolds Energy responded to Plains Marketing's motion for leave asserting, among other things, that there had not been enough time to complete discovery because Plains Marketing was not cooperating with the scheduling of its employees' depositions. Reynolds Energy's response included evidence that showed Plains Marketing's safety manager reported Dianna's fall as a trip over a guardrail. This pleading was signed by Bair.

21.      *Plains Marketing's Motion for Summary Judgment Denied*

On June 17, 2020, the trial court granted Plains Marketing's motion for leave to amend its no-evidence motion for summary judgment, but it denied Plains Marketing's no-evidence motion for summary judgment. It ordered Plains Marketing to produce eight employees for depositions.

22.     *Reynolds Transportation's Answer*

On July 13, 2020, Reynolds Transportation filed its original answer to Dianna's second amended petition.

23.     *Reynolds Energy's Motion to Compel Deposition Dates*

On September 9, 2020, Reynolds Energy filed a motion to compel Plains Marketing to provide adequate dates for the depositions of the eight employees the trial court had ordered to be deposed.

24.     *James White's Deposition*

On December 3, 2020, James White, a Reynolds Energy driver, was deposed.  He testified that the vapor recovery system hose did not contain a cap or a plug.  For this reason, on various occasions he had to kick off the mud against the bumper of his trailer.

25.     *Reynolds Energy's Cross-Action Against Plains Pipeline Companies*

On February 2, 2021, Reynolds Energy and Hayes filed cross-actions against Plains All American Pipeline, L.P. and Plains Pipeline, L.P. for contribution.  The cross-actions were signed by Johnson.

26.     *Plains Pipeline Companies' Cross-Claims*

On February 4, 2021, Plains Pipeline and Plains All American Pipeline filed cross-claims against Reynolds Energy and Hayes alleging that Reynolds and Hayes were the sole and proximate cause of Dianna's damages.  The Plains pipeline companies asked for contribution and indemnity.

27.     *Reynolds Defendants, Hayes Change Law Firms*

On March 5, 2021, the trial court granted the motion by Reynolds Energy Transport, LLC, Reynolds Transportation, Inc. (Reynolds defendants), and John A. Hayes to substitute the Flores Law Firm, in place of the BairHilty law firm, as their retained counsel.

*28.    Reynolds Energy, Hayes's Nonsuit*

On April 16, 2021, Reynolds Energy and Hayes nonsuited their cross-claims against the three Plains defendants. Their nonsuit stated they no longer desired to prosecute their cross-claims against the Plains defendants. The nonsuit was signed by the Flores Law Firm.

*29.    Motion for Finding of Spoliation Granted*

On May 28, 2021, the trial court granted Dianna's motion for a finding of spoliation of evidence against Reynolds Energy. The trial court struck all of Reynolds Energy's defenses except the defense of comparative fault asserted against parties other than Dianna. The order was signed by the Honorable David Canales.

*30.    Hayes's Second Supplemental Responses to Dianna's Request for Admissions*

On June 28, 2021, Hayes answered Plains Marketing's requests for admission. In his answers, he admitted he lied in his January 28, 2020 deposition about not having criminal convictions. The admissions were signed by Reynolds Energy's new attorney.

*31.    Reynolds Transportation's Responses to Dianna's Request for Admissions*

On June 30, 2021, Reynolds Transportation filed its responses to Dianna's requests for admissions. Reynolds Transportation admitted it did not blame the Plains defendants for Dianna's fall. The admissions were signed by the Flores Law Firm.

*32.    Plains Defendants' Motion for Sanctions*

On October 15, 2021, the three Plains defendants filed a motion for sanctions against Reynolds Energy and Reynolds Transportation, to which the two Reynolds defendants responded.

*33.    Hearing on Motion for Sanctions*

On January 6, 2022, the Plains defendants' motion for sanctions was heard by the Honorable Larry Noll. There was no live testimony. Instead, the attorneys argued their respective positions based on the offered evidence. The trial court asked the parties to agree that the exhibits

offered for the hearing would be admitted "as long as they were withdrawn thereafter and made available for future litigation." So, by agreement, the exhibits admitted were those presented to the trial court and those attached to the Plains defendants' motion for sanctions and the Reynolds defendants' response to that motion.

### 34. Evidentiary Hearing on Attorney's Fees as Sanctions

On February 18, 2022, the trial court heard evidence on Plains Marketing's attorney's fees.

### 35. Sanctions Order Signed

On March 8, 2022, the trial court, the Honorable Larry Noll, signed an order granting the sanctions motion against Reynolds Energy and Reynolds Transportation.[4] The trial court's order includes twenty-one findings of fact.

### 36. Post-Order Actions

On March 8, 2022, Reynolds Energy and Reynolds Transportation filed a petition for writ of mandamus in this court. Later, the parties reached an agreement, and the petition was dismissed. *In re Reynolds Energy Transp., LLC*, No. 04-22-00141-CV, 2022 WL 4492798, at *1 (Tex. App.—San Antonio Sept. 28, 2022, orig. proceeding) (per curiam) (mem. op.).

On March 23, 2022, Reynolds Energy and Reynolds Transportation filed a motion for reconsideration and new trial on the trial court's sanctions ruling. The motion was denied.

On July 21, 2022, Reynolds Energy and Reynolds Transportation filed their notice of appeal.

---

[4] In its order for sanctions, the trial court granted the Plains companies' objection to the Reynolds defendants' (1) late-filed response and sur-reply to the Plains companies' motion for sanctions and (2) motion for reconsideration; it struck those pleadings.

## APPELLANTS' ISSUES

In three issues, Appellants contend the trial court abused its discretion (1) by entering sanctions on Rule 13, Chapter 10, and its inherent power; (2) by not granting the motion for reconsideration and motion for new trial; and (3) by awarding attorneys' fees as sanctions without sufficient evidence that those fees were reasonable and necessary and directly related to the sanctionable conduct.

## STANDARD OF REVIEW

We review the trial court's order granting sanctions under an abuse of discretion standard. *Bennett v. Grant*, 525 S.W.3d 642, 654 (Tex. 2017) (Rule 13 sanctions); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (Chapter 10 sanctions); *Nath v. Tex. Children's Hosp. (Nath I)*, 446 S.W.3d 355, 361 (Tex. 2014) (both). If the trial court acts without reference to guiding rules and principles to such an extent that its ruling is arbitrary or unreasonable, the trial court abuses its discretion. *Nath I*, 446 S.W.3d at 361.

"Although we view conflicting evidence favorably to the court's decision, we are not bound by a trial court's fact findings or conclusions of law and must, instead, review the entire record independently to determine whether the trial court abused its discretion." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717, (Tex. 2020).

"Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion." *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.); *accord Bradshaw v. Bradshaw*, 555 S.W.3d 539, 559 (Tex. 2018) (quoting *Zeptner*); *Matter of Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied). "A decision lacking factual support is arbitrary and unreasonable and must be set aside." *Brewer*, 601 S.W.3d at 717; *see Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 347–48 (Tex.

App.—San Antonio 2006, pet. denied) ("A trial court abuses its discretion in imposing sanctions if the order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.").

**REQUIREMENTS TO IMPOSE SANCTIONS**

The decision to impose sanctions involves two distinct determinations: (1) whether conduct is sanctionable, and (2) what sanction to impose. *Brewer*, 601 S.W.3d at 716.

At issue in this case are sanctions imposed for filing (1) groundless pleadings, motions or documents brought in bad faith and for harassment under Rule 13, and (2) pleadings or motions filed without making a reasonable inquiry, that lacked legal or factual support, or were filed for an improper purpose under Chapter 10 of the Texas Civil Practice and Remedies Code.

## A. Rule 13

Under Rule 13, a pro se party or an attorney who signs a pleading, motion, or other document certifies that the signatory read the instrument and "that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13; *see KB Home Lone Star Inc. v. Gordon*, 629 S.W.3d 649, 658 (Tex. App.—San Antonio 2021, no pet.). Rule 13 further provides that a party or attorney who "make[s] statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt." TEX. R. CIV. P. 13.

### 1. *Groundless Definition*

A party seeking Rule 13 sanctions must first establish that the complained-of document is groundless. *See* TEX. R. CIV. P. 13; *Gordon*, 629 S.W.3d at 658; *Mann v. Kendall Home Builders Construction Partners I, LTD*, 464 S.W.3d 84, 92 (Tex. App—Houston [14th Dist.] 2015, pet. denied). "Groundless" for purposes of [Rule 13] means no basis in law or fact and not warranted

by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13; *Gordon*, 629 S.W.3d at 658.

### 2.    Reasonable Inquiry Required

The test to determine whether a document is groundless is an objective one: Did "the party and counsel [make] a reasonable inquiry into the legal and factual basis of the claim at the time the [instrument] was filed." *Loeffler*, 211 S.W.3d at 348 (citing *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, no pet.)); *accord Mann*, 464 S.W.3d at 92 (noting that a "'[r]easonable inquiry' means the amount of examination that is reasonable under the circumstances of the case").

To answer such an inquiry, "[t]he court will look to the facts available to the litigant and the circumstances *at the time the* [instrument] *was filed*." *In re United Servs. Auto. Ass'n*, 76 S.W.3d at 116; *accord Tarrant Cnty. v. Chancey*, 942 S.W.2d 151, 155 (Tex. App—Fort Worth 1997, no writ) (requiring the trial court to "examine the facts and circumstances existing at the time the pleading was filed"); *see Bravenec v. Flores*, No. 04-11-00444-CV, 2013 WL 1149418, at *8 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.).

When a represented party or the attorney fails "to make an objectively reasonable inquiry into the legal and factual basis of the claims at the time the pleading was filed," the pleading is groundless. *Mann*, 464 S.W.3d at 92; *see Loeffler*, 211 S.W.3d at 348.

### 3.    Additional Element

If a pleading, motion, or other document is found to be groundless, the conduct is not sanctionable unless accompanied by bad faith, brought for the purpose of harassment, or false when signed. *Nath I*, 446 S.W.3d at 363; *In re United Servs. Auto. Ass'n*, 76 S.W.3d at 116.

### a. Bad Faith

Bad faith is more than mere errors in judgment, lack of diligence, unreasonableness, or even gross negligence. *Brewer*, 601 S.W.3d at 718–19; *Estate of Davis v. Cook*, 9 S.W.3d 288, 298 (Tex. App.—San Antonio 1999, no pet.). Bad faith is "an intent to engage in conduct for an impermissible reason, willful, noncompliance, or willful ignorance of facts [and] includes 'conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose.'" *Brewer*, 601 S.W.3d at 718–19 (quoting *Pearson v. Stewart*, 314 S.W.3d 242, 248 (Tex. App.—Fort Worth 2010, no pet.)).

### b. Purpose of Harassment

Harassment occurs when an instrument is filed with the intent to annoy, alarm, and abuse another person. *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 676 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Bravenec*, 2013 WL 1149418, at *5 ("'Harass' is used in a variety of legal contexts to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person.").

### c. False When Made

Rule 13 does not define "false statement." In the context of libel and slander cases, the supreme court defined "false statement" as one where "the gist of the statement[] was not substantially true." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 711 (Tex. 2016). "To not be false, '[a] statement need not be perfectly true[] as long as it is substantially true.'" *Netflix, Inc. v. Barina*, No. 04-21-00327-CV, 2022 WL 3908540, at *3 (Tex. App.—San Antonio Aug. 31, 2022, pet. denied) (mem. op.) (alterations in original) (quoting *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019)). For purposes of Rule 13, we adopt the *Toledo* definition of "false statement."

*4.      Good Cause, Particularity*

Rule 13 sanctions may not be imposed "except for good cause, the particulars of which must be stated in the sanctions order."  TEX. R. CIV. P. 13; *Guerra v. L&F Distribs., LLC*, 521 S.W.3d 878, 889 (Tex. App.—San Antonio 2017, no pet.); *Mann*, 464 S.W.3d at 90.

The purpose of the "particularity" requirement is (a) to ensure the trial court is held accountable and adheres to the standard of the rule, (b) for the court to reflect carefully on its order before ordering sanctions, (c) to give notice to the offending party of the particular conduct being sanctioned, and (d) to enable the appellate court to review the order in light of the particular findings.  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 411 (Tex. App—Houston [1st Dist.] 2005, pet. denied) (citing *Rudisell v. Paquette*, 89 S.W.3d 233, 237 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.)).

*5.      Sanctions under Rule 215*

"If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215."  TEX. R. CIV. P. 13 (citing TEX. R. CIV. P. 215); *see New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 204 (Tex. App.—Dallas 1993, no writ).

**B.      Chapter 10**

Chapter 10 of the Texas Civil Practice and Remedies Code also authorizes sanctions.

*1.      Statutory Provisions*

Section 10.001 provides that a person who signs a pleading or a motion certifies "that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry" that the following are true:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; *see Gordon*, 629 S.W.3d at 658.

### 2. *Reasonable Inquiry Required*

A party seeking sanctions under chapter 10 of the Texas Civil Practice and Remedies Code is not required to specifically show bad faith or malicious intent on the part of the person signing the pleading or the motion. *Low v. Henry*, 221 S.W.3d 609, 617 (Tex. 2007); *see also Nath I*, 446 S.W.3d at 369. Instead, the inquiry is whether that person made a reasonable inquiry into all of the allegations and, accordingly, certified that all the allegations in the petition or the motion had evidentiary support or were likely to have evidentiary support. *Low*, 221 S.W.3d at 617.

### 3. *Sanctions for Lack of Legal or Factual Basis*

Therefore, unlike Rule 13, "Chapter 10 provides that a claim that lacks a legal or factual basis—without more—is sanctionable." *See Nath I*, 446 S.W.3d at 369 (citing *Low*, 221 S.W.3d at 617).

#### a. Legal Basis

"Legally, the claim must be warranted by existing law or a nonfrivolous argument to change existing law." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2)). However, a claim based on legal contentions in a pleading is not sanctionable against a represented party but

only against its counsel.  *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(d)); *Malouf v. Elana Spitzberg Tr.*, No. 05-15-00824-CV, 2016 WL 4158890, at *2 (Tex. App.—Dallas Aug. 5, 2016, no pet.) (mem. op.).

b.      Factual Basis

"Chapter 10 requires that each factual contention have evidentiary support or be likely to receive it after a reasonable opportunity for discovery."  *Nath I*, 446 S.W.3d at 369 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3)).  A pleading is sanctionable when the allegations do not have factual support and it is not likely they will have evidentiary support in light of the evidence the attorney has when he filed the pleading.  *Id.* (citing *Low*, 221 S.W.3d at 616).

4.      *Sanctions Limits*

For a violation of section 10.001, "[t]he sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated."  TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b); *accord Low*, 221 S.W.3d at 620.

A sanction may include any of the following:
    (1) a directive to the violator to perform, or refrain from performing, an act;
    (2) an order to pay a penalty into court; and
    (3) an order to pay the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(c); *see Low*, 221 S.W.3d at 620.

**C.      Rule 13 and Chapter 10**

1.      *Relevant Time Period*

Whether determining sanctions under Rule 13 or Chapter 10, a trial court should only assess the evidentiary support available to the attorney at the time the pleading is filed.  *Nath I*, 446 S.W.3d at 369; *Wenger v. Flinn*, 648 S.W.3d 448, 455–56 (Tex. App.—San Antonio 2021, no

pet.) (citing *In re M.A.G.*, No. 04-18-00833-CV, 2020 WL 7633920, at \*12 (Tex. App.—San Antonio Dec. 23, 2020, pet. denied) (mem. op.)); *Gomer v. Davis*, 419 S.W.3d 470, 478, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Considering evidence developed subsequently would "chill litigation in cases where claimants in good faith believe they possess a claim." *Nath I*, 446 S.W.3d at 369. If the party later learns through discovery that no factual support for the contention exists and continues to pursue litigation, then such conduct may be sanctioned as abusive of the discovery process, not the filing of pleadings under Chapter 10. *Id*. at 370 (citing TEX. R. CIV. P. 215.3).

### 2.    *Presumption of Good Faith*

In considering both Rule 13 and Chapter 10 sanctions, there is a presumption that pleadings and motions are filed in good faith. *Nath I*, 446 S.W.3d at 362; *Low*, 221 S.W.3d at 614. "The party seeking sanctions bears the burden of overcoming this presumption of good faith." *Low*, 221 S.W.3d at 614 (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993)).

To overcome the good faith presumption, the party must prove that the filing is "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668–69 (Tex. App.—Dallas 2003, no pet.); *see Wenger v. Flinn*, 648 S.W.3d 448, 456 (Tex. App.—San Antonio 2021, no pet.).

### 3.    *Evidence Required*

"As with sanctions under Rule 13, to impose sanctions under section 10.001(1), the trial court must hold an evidentiary hearing to make the necessary factual determinations about the party's or the attorney's motives and credibility." *Gomer*, 419 S.W.3d at 480; *accord New York Underwriters*, 856 S.W.2d at 205. The trial court must consider the intent behind the acts or omissions of the party to be sanctioned, not merely the legal merits of the pleading or motion. *Elkins*, 103 S.W.3d at 668; *New York Underwriters*, 856 S.W.2d at 205. Intent can be established

by direct or circumstantial evidence, "but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness." *Brewer*, 601 S.W.3d at 718–19.

"Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court has no evidence to determine that a party or its attorneys filed the pleading in bad faith or to harass." *Davila v. World Car Five Star*, 75 S.W.3d 537, 544 (Tex. App.—San Antonio 2002, no pet.) (quoting *New York Underwriters*, 856 S.W.2d at 205); *see also Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 36 (Tex. App.—Texarkana 2018, pet. denied); *Gomer*, 419 S.W.3d at 480.

## SCOPE OF REVIEW

In their motion for sanctions, Appellees prayed for sanctions against Reynolds Marketing and Reynolds Transportation under Rules 13, 166a(h), and 215 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code.

In the body of their motion, however, Appellees only alleged violations of Rule 13 and Chapter 10. Likewise, in its order, the trial court only identified Rule 13 and Chapter 10 as the bases for its sanctions. Accordingly, we limit our review to Rule 13 and Chapter 10. *See Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex. App.—Houston [14th Dist.] 1997, no writ) (limiting review to the bases used in the sanctions order).

Our review is further limited to the complaints contained in Appellants' motion for sanctions. Because of constitutional due process concerns, "sanctions may only be imposed when the person or party against whom the sanction is sought has received notice and an adequate opportunity to respond." *In re Champagne*, No. 03-21-00426-CV, 2021 WL 4976719, at *2 (Tex. App.—Austin Oct. 27, 2021, orig. proceeding) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 10.003); *see Clark v. Bres*, 217 S.W.3d 501, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Imposing sanctions on a party without notice and an opportunity to be heard would

violate the requirements of due process."); *In re L.A.M. & Assocs.*, 975 S.W.2d 80, 83 (Tex. App.—San Antonio 1998, orig. proceeding) (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)). When sanctions are based on a party's motion, a trial court may not award sanctions on grounds not asserted in that motion. *Polansky v. Berenji*, 393 S.W.3d 362, 369 (Tex. App.—Austin 2012, no pet.); *see Mann*, 464 S.W.3d at 93; *Greene v. Young*, 174 S.W.3d 291, 298–301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (reversing sanctions award because parties did not have notice of legal basis or conduct under consideration for sanctions).

We further limit our review to the record before us. We note that there was no live testimony presented at the hearing. So, the record we review consists of the documents the trial court based its ruling on as stated in its order: (a) the pleadings and submissions of all parties, (b) the exhibits attached to the pleadings which were cited to the trial court at the hearing, and (c) the exhibits already on file among the papers of this court and which were incorporated by reference in the submission.

Finally, in our review, we will not consider as evidence arguments the attorneys made in support of, or in opposition to, the motion for sanctions; "[m]otions and arguments of counsel are not evidence." *In re Barrett*, No. 04-23-00928-CV, 2023 WL 8793150, at *5 (Tex. App.—San Antonio Dec. 20, 2023, orig. proceeding) (mem. op.) (quoting *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ)).

### ORDERING SANCTIONS UNDER RULE 13 AND CHAPTER 10

In their first issue, the Reynolds companies argue that the trial court abused its discretion by awarding sanctions against them.

#### A. Reynolds Companies' Arguments

Appellants argue that (1) the record contains no proof of groundlessness, bad faith, or improper motive, and (2) the trial court's findings lack evidentiary basis, are wholly conclusory,

or grant relief not requested in Appellees' motion for sanctions. Specifically, Appellants contend that neither the motion for sanctions nor any document attached to it or referenced in it contain or reference any proof that any pleading or document referenced in the court's order or in the Plains companies' motion for sanctions were groundless or were filed in bad faith or for any improper motive at the time any such document was filed.

## B.     Plains Companies' Arguments

Appellees argue the trial court did not abuse its discretion in granting the motion for sanctions pursuant to Rule 13 and Chapter 10 because the record contains evidence demonstrating Appellants' sanctionable conduct, which included (a) failing to undertake a reasonable inquiry before filing pleadings for an improper purpose and which contained allegations lacking evidentiary support and (b) serving written discovery responses that were groundless and brought in bad faith.

## C.     Plains Companies' Motion for Sanctions

To resolve the issues before us, and because a trial court may not award sanctions on grounds not asserted, we must first look to Appellees' sanctions motion. *See In re Champagne*, 2021 WL 4976719, at *2, *Polansky*, 393 S.W.3d at 369; *Clark*, 217 S.W.3d at 513; *Greene*, 174 S.W.3d at 298–301; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 675 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (a trial court "is not authorized to grant sanctions under a statute or rule not identified in the motion for sanctions").

### 1.     *Groundless Claim or Contention*

As we noted above, Rule 13 requires evidence of both groundlessness and bad faith or improper motive, such as intent to harass. *Nath I*, 446 S.W.3d at 362–63. Chapter 10 requires proof of an improper motive or proof that a pleading lacked legal or factual support or is not likely to have evidentiary support. *Id.* at 362.

Because "groundless" under Rule 13 is defined as not having a basis in law or fact, both Rule 13 and Chapter 10 share the same element. *See Mann*, 464 S.W.3d at 92; *see also* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. Unlike Rule 13, Chapter 10 is violated if a pleading or motion is groundless under any subsection of section 10.001. *See Mann*, 464 S.W.3d at 92.

The relevant time period for both rules is the time when the pleading or document is filed. Without evidence of the circumstances surrounding the filing of a pleading, motion or document, a trial court abuses its discretion by ordering sanctions. *Nath I*, 446 S.W.3d at 369; *Pace v. Aces Autos, LLC*, No. 08-23-00127-CV, 2024 WL 1237502, at \*11 (Tex. App.—El Paso Mar. 22, 2024, no pet. h.) (mem. op.).

The trial court also abuses its discretion by awarding Rule 13 sanctions if there is no evidence of the signer's credibility or motive. *See Pace*, 2024 WL 1237502, at \*10.

### 2. *Plains Companies' Motion for Sanctions*

In their sanctions motion, the Plains companies alleged that the Reynolds defendants and their former attorneys violated Rule 13 and Chapter 10 in three respects:

- Using Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3 to generate later pleadings and serving deposition notices when Appellants and former attorney knew the third amended answers was groundless, without evidentiary support, false and made in bad faith for the purpose of harassing.

- Opposing Plains Marketing's no-evidence motion for summary judgment with (a) Hayes's false testimony, (b) a sham affidavit of a later de-designated expert, and (c) false allegations supported by former counsel's sworn affidavit that eight Plains employees and other people with knowledge of relevant facts had to be deposed before the court could consider Plains Marketing's motion.

- Filing a cross-action against Plains Marketing in April 2021 with the intent to continue to prosecute the action against Appellees despite clear and uncontroverted evidence that Reynolds Energy's claims were false.

3. *Exhibits Attached to the Motion for Sanctions*

The Plains companies attached the following exhibits to their motion:

A. Transcript of John Hayes deposition on January 28, 2020;

B. Transcript of James White deposition on December 3, 2020;

C. Reynolds Energy's and Hayes's Second Amended Answer;

D. Reynolds Energy's Third Amended Answers to Plaintiff's First Set of Interrogatories;

E. Reynolds Energy's Third Amended Responses to All Parties' Requests for Disclosure and Designation of Experts;

F. Plaintiff's Response to Plains Marketing's No-Evidence Motion for Summary Judgment;

G. Plains Marketing's Reply to Reynolds Energy's Response to the No-Evidence Motion for Summary Judgment;

H. String of e-mails to and from the Flores Law Firm and Appellees' attorney;

I. Hayes's Second Supplemental Responses to Plaintiff's First Requests for Admissions;

J. Appellants' and Hayes's Third Amended Responses to All Parties' Requests for Disclosure and Designation of Experts;

K. Reynolds Transportation's Objections and Responses to Plaintiff's First Request for Production;

L. North Owens Station Logs;

M. Attorney's Fees payments list;

N. Reynolds Energy's and Hayes's Response in Opposition to Plains Marketing's Motion for Leave to Amend its No-Evidence Motion for Summary Judgment;

O. An example sanctions order from a case in Fort Bend County;

P. Reynolds Transportation's Responses to Plaintiff's Requests for Admissions; and

Q. Reynolds Energy's Responses to Plaintiff's Ninth Request for Admissions.

Keeping in mind that both Rule 13 and Chapter 10 require us to review the evidence existing at the time Bair signed the third amended answers to Dianna's Interrogatory No. 3, Reynolds Energy's response to Plains Marketing's no-evidence summary judgment, and Johnson

signed Reynolds Energy's cross-action against Plains Marketing, we will first determine what those circumstances were.

**D.     Circumstances When the Challenged Documents were Filed**

Dianna's accident occurred on December 20, 2018.  Suit was filed on January 10, 2019, against Plains Marketing and Reynolds Energy.  On October 22, 2019, Dianna brought Hayes into the lawsuit.  Between the time Dianna filed her lawsuit and January 8, 2020, the parties exchanged discovery responses.  The first deposition took place on January 8, 2020, when Charles Mills, the other guard at the North Owens site when Dianna fell, was deposed.  On January 16, 2020, Reynolds Energy served its amended answers to Dianna's interrogatories.  Shortly thereafter, Dianna filed her first motion for Reynolds Energy to disclose its theories of liability.  On January 22, 2020, Reynolds Energy's former attorney and Dianna's attorney entered into a Rule 11 agreement to resolve Dianna's motion to disclose theories of liability.  As part of the agreement, Reynolds agreed to amend its answer to Interrogatory No. 3 once it received more information on the liability theories.

In an e-mail dated February 5, 2020, to Plains Marketing's attorney, Reynolds Energy's attorney, Marc Johnson, requested the depositions of two Plains Marketing employees, and asked for the identity of the Plains employee who had the most knowledge about the design, installation, operation, and maintenance of the LACT unit.  Plains Marketing's attorney responded that same day with "My presumption is that will be Mike, but I will check."  The next day, Marc Johnson asked Plains Marketing's attorney to add the name of a third employee to the list.

Hayes was again deposed on February 21, 2020.  Jesse Guerra, a driver who was at the site when Dianna fell, was deposed on March 17, 2020.

On April 7, 2020, Dianna filed a motion to strike the liability theories that Reynolds Energy had not disclosed, which motion Plains Marketing later joined.  On April 27, 2020, Plains

Marketing filed its motion for no-evidence summary judgment. Also on April 27, 2020, Reynolds Energy and Hayes filed a cross-action for contribution against Plains Marketing.

On April 28, 2020, Reynolds Energy served its third amended answers to Dianna's Interrogatory No. 3 and included nine theories of liability on the part of Plains Marketing. In that same amended answer, Reynolds Energy reserved its right to supplement once Plains Marketing produced its employees for depositions. Reynolds Energy's third amended answers included the following language:

> Defendant reserves the right to amend this answer as discovery is ongoing and Plains Marketing, LP has refused to provide dates its employees identified herein would be made available for deposition, and further, filed motions to quash the depositions of these employees noticed by Defendant when no agreement to schedule the depositions could be obtained from Plains Marketing, LP.

On May 29, 2020, Dianna filed a second amended petition bringing into the lawsuit Reynolds Transportation, Inc.; Plains All American Pipeline, L.P.; Plains Pipeline, L.P.; Vapor Point, LLC; John E. Meador Construction, Inc.; and Quality Pipeline Construction, LLC.

On June 6, 2020, three days before the response to Plains Marketing's motion for summary judgment was filed and four months after Appellants' first request for depositions, Appellees' attorney wrote an e-mail to Appellants' former attorneys stating the following:

> Given the number of motions pending for the hearing of June 16 and the addition of the new Defendants, I will agree to move my hearing on my No Evidence Summary Judgment for a short time to permit depositions of some of the witnesses that the parties have requested and as I have previously offered. This correspondence shall be my effort to confer with all parties. . . . In the meantime, I will make Mike Vargas available for deposition as requested and will provide you all with dates in July for same. Ron, Please provide us with dates in July to take Jake Thigpen's deposition.

Marc Johnson, Appellants' former attorney, responded on the same day with the following:

> Mary, would you be willing to enter into a Rule 11 agreement to present the Plains personnel who are the subject of your motions to quash for deposition? We will agree to produce Jake Thigpen thereafter. This is actually the first time you have offered to produce anyone from Plains for deposition. Because of our past

difficulty in getting these witnesses schedule for deposition, we will need a mutually acceptable Rule 11 agreement from you setting forth the timing of these depositions to avoid having to go back to the court for relief. I would be happy to prepare a first draft for your review if you would like.

To which Appellees' attorney responded on the same day:

Marc, if you will please review my emails, you will see that your statement is untrue—this is the 4th time I've offered some of my people. I will agree to produce Mike Vargas first if you will first supplement your disclosure regarding the expert(s) and their opinions you reference to respond to my requests for production. . . . Then I will work with you on a Rule 11 as to the depositions.

In response, Marc Johnson wrote this:

Mary, I have seen all your emails. You have never offered your witnesses for deposition. Quite the opposite. You have made some references to maybe being willing to offer a Plains representative for deposition if we agree to comply with your demands relating to the substance of our discovery responses despite failing to cite any rule or case supporting your demand when asked to do so. In effect, you have not made any offer at all. You are now doing this again in your email below.

On June 9, 2020, Bair filed Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment. The response included Hayes's deposition testimony, Gehse's affidavit, and Marc Johnson's affidavit.

On June 10, 2020, Plains Marketing's attorney filed a motion for leave to amend its no-evidence motion for summary judgment. On June 12, Reynolds Energy responded to Plains Marketing's motion for leave stating there had not been enough time to complete discovery because Plains Marketing was not cooperating with scheduling its employees for depositions. On June 17, 2020, the trial court denied Plains Marketing's motion for summary judgment and ordered it to produce eight of its employees for deposition. Plains Marketing continued to delay producing its witnesses despite the trial court's order to do so. On September 9, 2020, Reynolds Energy filed a motion to compel Plains Marketing to provide adequate dates for the depositions of the eight employees the trial court had ordered to be deposed.

Based on the evidence, we conclude that the circumstances surrounding the signing of Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3, its response to Plains Marketing's motion for summary judgment, and the April cross-action are evidence that discovery was ongoing. We base this conclusion on these facts: (a) Plains Marketing had not presented its employees for depositions despite requests made by Bair and Johnson, (b) Dianna's motion to strike Reynolds Energy's liability theories was pending, and (c) Reynolds Energy was preparing its evidence to respond to Plains Marketing's no-evidence motion for summary judgment, which was filed while discovery was ongoing.[5]

We now turn to Appellees' argument in their sanctions motion (that Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3 contained groundless theories of liability).

### E. Reynolds Energy's Third Amended Answers to Interrogatory No. 3

Dianna's Interrogatory No. 3 was a contention interrogatory. It requested Reynolds Marketing to disclose the identity of someone or some condition or event not in its control which Reynolds Marketing contended was the cause of Dianna's accident.

*1. Reynolds Energy's Answer*

In its third amended answers to Interrogatory No. 3,[6] Reynolds Energy alleged that Plains Marketing was a cause of Dianna's accident based on the following theories of liability:

1. Plains was involved in the design, procurement and directed construction of the LACT and Scrubber system and gave final approval for same. Any defects or

---

[5] Rule 166a(i) addresses a no-evidence motion:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(i).

[6] It is undisputed that Reynolds Energy served its third amended answers to Interrogatory No. 3 as a response to Dianna's April 7, 2020 motion to strike undisclosed liability theories.

problems with the design, construction or operations are the responsibility of Plains.

2. Plains failed to allow for normal operating conditions LACT and Scrubber such that the Scrubber jammed up and caused not only the failure of vapor recovery system (VRS) but backpressure into the lines on multiple occasions causing a shutdown of the VRS.

3. Plains did not take proper operational precautions (from a simple cap or hanger to other options) to prevent the jamming of the Scrubber system in that they allowed, after usage by oil tankers, the end of the vapor recovery hose to fall into the dirt, mud, water and rocks allowing it to clog and jam the Scrubber system which was designed to chemically scrub out hydrocarbons from vapor, not water, mud, dirt and rocks.

4. Plains had created "Plains All American Pipeline-Guidelines for Guards" dated June 27, 2016, that the guards were to follow at North Owens. The files of Mills and [Dianna] are devoid of any evidence that they were ever trained on these requirements or that Plains ever required Timekeepers to do so. We have independent evidence verifying multiple failures of the vapor recovery system yet Plains has failed to produce a single "observational report" regarding same as required by their own Guidelines. This is despite Mike Vargas and James McIntyre of Plains being onsite and personally witnessed problems with the vapor recovery system as well as relief valve pop-offs on trucks.

5. Plains contracted with John Meador Construction to do repairs and some of the installation of the LACT and Scrubber but was directed and controlled by Mike Vargas of Plains. That would have been a good time to allow for something to protect and store the vapor recovery hose.

6. Plains contracted with Quality Pipeline Construction to do the initial install of the LACT, Scrubber and railing. Work invoice says all work is being done as directed by Jimmy McKee of Plains. The railing at the point of the accident is l6-l8 inches. OSHA requires railing in a pedestrian work area to be much higher in range of 30-38 inches so as not to create a trip hazard. The railing in place at the time of the accident created a trip hazard. All of the installation was approved by Mike Vargas of Plains. If the railing had been at the proper height the accident would not have happened.

7. Plains was the only source of any air that came out of side vent. All pressure in the oil tank trailer had equalized and was static. The Vapor Recovery System was jammed up and prevented Hayes from loading. Guerra was loading at LACT One and was hooked up to the same VRS. The air vapor from his trailer would have gone into a piping system connected to T721 and due to the Scrubber being jammed the vapor back pressure took the path of least resistance and came out the side vent valve. T721 was between Guerra and the Scrubber.

8. Plains failed to assure that Mills and [Dianna] had the proper training and licensure to do their job as noncommissioned security guards. Texas requires such licensure and training but neither Mills nor [Dianna] were properly licensed or trained.

9. Plains failed to monitor and supervise Mills and [Dianna] regarding compliance and creating documentation in accordance with Plains own policies and procedures including but not limited to creating observational reports and documenting any problems or concerns that arose with regard to operations or safety.

This second amended answer was followed by the following disclaimer:

Defendant reserves the right to amend this answer as discovery is ongoing and Plains Marketing, LP has refused to provide dates its employees identified herein would be made available for deposition, and further, filed motions to quash the depositions of these employees noticed by Defendant when no agreement to schedule the depositions could be obtained from Plains Marketing, LP.

Bair signed the amended answer to Interrogatory No. 3. Reynolds Energy did not verify it.

### 2. *Plains Companies' Arguments*

In its sanctions motion, Appellees argued that Appellants' allegations in the amended answer to Interrogatory No. 3 were false, unsupported by any evidence and disproven by evidence known at the time or before Reynolds Energy and Bair served the amended answer. They argued that the false allegations were the basis of future pleadings, including Dianna's Second Amended Petition, which resulted in a delay of the trial. Therefore, they conclude, the third amended answers to Interrogatory No. 3 was in violation of section 10.001 of the Texas Civil Practice and Remedies Code.

Section 10.001 applies to pleadings and motions but not to discovery. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; *Nath v. Tex. Children's Hosp.* (*Nath I*), 446 S.W.3d 355, 369–70 (Tex. 2014). However, given that Appellees allege that the theories of liability listed in Reynolds Energy's third amended answers to Interrogatory No. 3 were incorporated into its response to Plains Marketing's summary judgment motion, which is sanctionable under section 10.001, we will review the challenged theories of liability to determine if they were groundless.

3.      *Were Reynolds Energy's Third Amended Answers to Interrogatory No. 3 Groundless?*

In support of their argument that the theories of liability delineated in answer to Interrogatory No. 3, Appellees relied on (a) Dianna's Second Amended Petition and her response to Plains Marketing's no-evidence motion for summary judgment, (b) an April 27, 2020 e-mail from Bair, (c) Hayes's and Guerra's depositions testimony, (d) a National Weather report of the city where the North Owens site is located, (e) OSHA standards, and (f) Texas Department of Public Safety licensing records.

a.      Dianna's Second Amended Petition, Response to Plains Marketing's No-Evidence Motion

In her Second Amended Petition, Dianna alleged she was suing other parties because Reynolds Energy was shifting blame away from itself "[d]espite the overwhelming evidence that this incident resulted from the negligence of Defendants Hayes and Reynolds."

At the sanctions hearing, Appellees argued that Dianna sued them only because, within twenty-four hours after Dianna fell, Bair told her attorney that he was intending to blame Plains Marketing for her injuries. To support their argument, Appellees relied on Dianna's response to Plains Marketing's no-evidence summary judgment motion. In that response Dianna asserted that "even prior to the beginning of this litigation, Defendant Reynolds indicated to counsel for Plaintiff its intention to lay blame for this incident on Defendant Plains Marketing, L.P. This representation from Defendant Reynolds was the reason that Defendant Plains Marketing, L.P. was included as a Defendant in Plaintiff's Original Petition." Dianna's response to Plains Marketing's motion for summary judgment was admitted by the trial court as evidence supporting sanctions.

We do not agree with Appellees that the contents of Dianna's petition and response to the summary judgment are evidence. Contents of pleadings are not evidence and, as such, they do not support Appellees' claim that Reynolds Energy and Bair violated Rule 13 or Chapter 10 by filing

the third amended answers to Interrogatory No. 3. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 898 (Tex. App.—El Paso 2012, no pet.) (citing *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143, 143 (Tex. 1980)); *see also Vill. Square, Ltd. v. Barton*, 660 S.W.2d 556, 559 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (ordinarily, pleadings are not evidence). Also not evidence are Appellees' arguments relating to the veracity of the contents in Dianna's pleadings; arguments of counsel are not evidence. *See In re Barrett*, No. 04-23-00928-CV, 2023 WL 8793150, at *5 (Tex. App.—San Antonio Dec. 20, 2023, orig. proceeding) (mem. op.) (quoting *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ)).

Based on Dianna's pleadings alone, Appellees did not meet their burden to show that Reynolds Energy's third amended answers to Interrogatory No. 3 were groundless.

We next address Reynolds Energy's former attorney's April 10, 2020 e-mail.

### b. Bair's April 10, 2020 E-mail

In their brief, Appellees contend that on April 10, 2020, Ron Bair, Appellants' former attorney, knew that Plains Marketing did not design, install, or maintain the LACT unit and Vapor Recovery System. Appellees argue that despite this knowledge, Bair signed the third amended answers to Interrogatory No. 3 stating that the Plains companies designed, installed, and maintained the LACT unit and the vapor recovery system.

In support, Appellees introduced an e-mail dated April 10, 2020, where Bair asked for the depositions of all the other defendants' employees.[7] In the e-mail, Bair identified the role each defendant played in the lawsuit and the depositions he needed from each. Appellees argued that

---

[7] The other defendants included Timekeepers, Inc.; Plains Marketing, L.P.; Plains All American Pipeline, L.P.; Plains Pipeline, L.P.; Vapor Point, LLC; Quality Pipeline Construction, LLC; John E. Meador Construction, Inc.; and Dragon Products, Inc.

because Bair identified Vapor Point as responsible for the Scrubber system's design, installation, and maintenance, and Quality Pipeline Construction as having designed and installed the LACT unit and the railing, Reynolds knew that Plains did not design, install, or maintain the equipment at issue.

What Appellees fail to bring forward is that in that same e-mail, Bair also asked for the Plains companies' employees who dealt with (a) the initial construction of the LACT and vapor recovery system and signed off on the work completed, (b) the design and construction of the railing around the LACT, (c) Vapor Point on the installation and maintenance of the vapor recovery system, and (d) the review or had any part in the design and construction of the LACT, its railing, and the vapor recovery system and the selection of the Scrubber system in question including communications with Vapor Point.

Appellees also failed to note that in Reynolds Energy's third amended answers to Interrogatory No. 3, it did not contend that the Plains companies were solely responsible for the design and construction of the LACT and Scrubber system; it simply stated that "Plains was *involved* in the design, procurement and directed construction of the LACT and Scrubber system," (emphasis added), which is consistent with Bair's April 10, 2020 e-mail.

Based on Bair's April 10, 2020 e-mail, we agree with Appellees that when Bair signed the third amended answers to Interrogatory No. 3, Bair had knowledge of Vapor Point and Quality Pipeline's involvement in the design, construction, and installation of the LACT unit and the Scrubber system. We don't agree, however, that Bair's April 10, 2020 e-mail evidenced Bair's knowledge that the Plains companies were *not* involved in any aspect of the design, installation, or construction of the LACT unit and the Scrubber system.

Contrary to Appellees' contention, Bair's April 10, 2020 e-mail does not support a finding that Reynolds Energy's third amended answers to Interrogatory No. 3 were groundless.

c.      Hayes's and Guerra's Deposition Testimony

Appellees argue that Hayes's and Guerra's deposition testimony, taken before Bair signed the third amended answers to Interrogatory No. 3, showed no evidence of problems with the vapor recovery system and that Hayes's theory that either air "regurgitation" or a clog caused the pop-off had never occurred before. Because Reynolds Energy knew of Guerra's testimony before Bair signed the third amended answers, Appellees conclude Reynolds Energy's contentions were baseless.

(1)      Hayes's Deposition

At his January 28, 2020 deposition, Hayes testified that, on the day of Dianna's fall, he was able to determine that his truck was not one of the causes of the pop-off. As he left the scene, he concluded that the vapor recovery system was full of water, mud, or gunk from the ground. Although it had not rained on that day and there was no mud on the ground, it had happened before to him. He explained that when the vapor recovery line is filled with mud, it causes a pressure buildup that results in a pop-off.

(2)      Guerra's Deposition

Jesse Guerra, a Reynolds Energy driver, arrived at the North Owens site about six minutes after Hayes. Hayes was already loading his tanker when Guerra arrived. As Guerra began loading his tanker at the other LACT unit, he heard an air release—or pop-off—coming from the LACT unit where Hayes was loading, and he saw Hayes underneath his truck. Guerra had never heard of air regurgitation or a clog causing a pop-off. But he knew that other drivers experienced clogging and could not fill their truck with crude oil. In his opinion, on the night of the accident, the cause of the pop-off was a problem with Hayes's truck. There was nothing going on with the Plains companies' equipment that caused the pop-off.

(3)     Conflicting Evidence

Here, Guerra and Hayes had different opinions on what caused the pop-off in Hayes's tanker on the day of Dianna's fall. Guerra opined that it was Hayes's tanker. Hayes said that it was a clogged vent hose. Both knew, however, that vent hoses clogged up: Hayes because he personally experienced it, Guerra because he heard it from other drivers.

(4)     Reasonable Inquiry into Facts

To determine whether Reynolds Energy's liability theories relating to a clogged vent being the cause of the air pressure release are groundless based on Guerra's and Hayes's differing personal opinions, we must ask whether Bair made a reasonable inquiry into the factual basis supporting such theories before signing the third amended answers to Interrogatory No. 3. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 348 (Tex. App.—San Antonio 2006, pet. denied) (citing *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, no pet.)); *see also Bravenec v. Flores*, No. 04-11-00444-CV, 2013 WL 1149418, at *4, *8 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.) (reasonable inquiry requires amount of examination that is reasonable under circumstances). If a factual contention on the theory of liability is "likely to have evidentiary support after a reasonable opportunity for further investigation and discovery" then under Chapter 10, it is not groundless. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3); *Nath I*, 446 S.W.3d at 369.

(5)     Facts at Relevant Time

We previously concluded that when Bair filed Reynolds Energy's third amended answers to Interrogatory No. 3, discovery was ongoing, and the Plains companies were refusing to produce their employees for depositions. The record also shows that in the third amended answers to Interrogatory No. 3, Bair included a disclaimer to amend the answers on the grounds that discovery was ongoing, Plains Marketing had refused to provide dates for its employees to be deposed, and

it had quashed deposition notices. Guerra testifying to something different than what Hayes testified to does not show that either testimony was false or true. We are reminded that in litigation, witnesses often give controverting opinions, and it is through the discovery process that the same are cleared, confirmed, or rejected.

We conclude that Bair's inquiry on the theory of liability regarding the clogged vent hose based on Hayes's testimony was reasonable and likely to have evidentiary support under the circumstances. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

d.    <u>Weather Report</u>

Appellees argue that Hayes's theory of a mud clog was entirely speculative based on a weather report produced at his deposition, which showed it had virtually no rain for months before and on the day of Dianna's fall. In their motion for sanctions, they alleged Hayes's testimony was false.

As stated above, on January 28, 2020, Hayes testified that in his opinion the recovery system was full of water, mud, or gunk from the ground. Although it had not rained on that day and there was no mud on the ground, it had happened to him before.

At Hayes's February 21, 2020 deposition, Plains Marketing's attorney showed Hayes a copy of the National Weather Report. Hayes agreed that the report showed that on the month before Dianna fell, there were only two days of rain that totaled almost an inch-and-a-half. Hayes, however, explained that mud would build up inside the hoses with vapor from the trucks and that the hoses would have to be cleaned to remove that buildup. He did not know how they were cleaned, how often they were cleaned, or who was responsible for the cleaning.

Hayes's testimony shows another reason for the clogging: the vapor from the trucks. Therefore, the weather report alone does not show how the vapor hoses could have been clogged.

But a determination of whether Reynolds Energy's liability theories relating to a clogged vent are groundless because of the weather report requires us to ask whether Bair made a reasonable inquiry into the factual basis that supported those theories.

At the time Bair signed the third amended answers to Interrogatory No. 3, discovery was ongoing. In those amended answers, Bair reserved the right to amend the answers on the grounds that discovery was ongoing, Plains Marketing had refused to provide dates for its employees to be deposed, and it had quashed deposition notices.

We conclude it was reasonable under the circumstances for Bair to rely only on Hayes's testimony that the clogged vent hose could have been a cause of the accident. We conclude that those theories were likely to have evidentiary support at the time and under the existing circumstances when Bair signed Reynolds Energy's third amended answers to Interrogatory No. 3. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3); *Low*, 221 S.W.3d at 614.

### e. Dianna's License as a Guard

In the third amended answers to Interrogatory No. 3, Reynolds Energy asserted the following theory of liability against the Plains companies:

> Plains failed to assure that Mills and [Dianna] had the proper training and licensure to do their job as a noncommissioned security guards. Texas requires such licensure and training but neither Mills nor [Dianna] were properly licensed or trained.

Appellees argue that Reynolds Energy's liability theories are not supported because the evidence showed Dianna and Mills were not employed by Plains, that Plains had no duty to train them, and that Dianna was properly licensed as a noncommissioned officer. Had Appellants exercised due diligence before making the allegation, a search in the Texas Department of Public Safety's website would have shown Dianna was properly licensed and trained.

We will separately analyze the issues of training and licensing.

### (1)    Training

Contrary to Appellees' contention, Reynolds Energy did not assert that Mills and Dianna were employed by Plains Marketing or that it was Plains Marketing's duty to train them. Instead, Reynolds Energy's liability theory was based on Plains Marketing failure to "assure Mills and [Dianna] had the proper training."

At the time Bair signed Reynolds Energy's third amended answers to Interrogatory No. 3, he had available Appellees' "Guidelines for Guards" and Mills's deposition testimony.

Plains All American Pipeline's "Guidelines for Guards" required Timekeepers, the company that hired Mills and Dianna, to follow safety procedures at all times. The contract between Timekeepers and Plains All American Pipeline required Timekeepers to ensure that all operations were conducted in a safe manner, and to promptly correct and report to Plains' employees all hazards or unsafe conditions. Despite the concern with safety, according to Mills's testimony, he never participated in a Plains Marketing safety meeting, and the only training he and Dianna received from Timekeepers was to wear hard hats and a neon reflective vest, how to fill out paperwork, and who to call in the event of an emergency. There is no evidence in the record that Plains Marketing took any steps to "assure" safety procedures were being followed by the guards.

We conclude that Bair reasonably investigated Reynolds Energy's theory of liability that the Plains companies did not assure that Dianna and Mills were trained. Therefore, that theory is not groundless.

### (2)    Licensing

Appellees argue that Bair failed to exercise due diligence before making the licensing allegation. They argue that a search in the Texas Department of Public Safety's website would

have shown Dianna was properly licensed and trained. They do not argue, however, that the same search would have shown that Mills was also licensed.

To determine whether Bair's legal theory that Plains Marketing did not *assure* that Dianna and Mills had the required licensing is groundless, we once again look at the evidence available to Bair at the time he signed the third amended answers to Interrogatory No. 3.

The record shows that, at the time of Mills's deposition, Bair had Dianna's and Mills's personnel files from Timekeepers. Mills testified that when they started working for Timekeepers, they took a test for a Texas security license through the Department of Homeland Security. But Veronica, their supervisor at Timekeepers, did not receive the licenses.

Appellants argue that because it was later confirmed that Mills did not have a license, their theory of liability was not groundless. However, as stated throughout our opinion, we will only consider the evidence Bair had at the time he signed Reynolds Energy's third amended answers to Interrogatory No. 3. That evidence shows Bair knew from Mills's testimony that both Mills and Dianna had taken the test for a Texas license for security guards. The evidence also shows that Bair knew Timeshares did not have their licenses on file.

The evidence also shows that from January 18, 2020, when Mills was deposed, through April 28, 2020, it would have been reasonable for Bair to inquire through any source whether either had a Texas license as noncommissioned officers. Therefore, a statement that Dianna and Mills were not properly licensed was groundless.

### f. Guardrails Violated OSHA Standards

In its third amended answers to Dianna's Interrogatory No. 3, Reynolds Energy's OSHA theory of liability was this:

> Plains contracted with Quality Pipeline Construction to do the initial install of the LACT, Scrubber and railing. Work invoice says all work is being done as directed by Jimmy McKee of Plains. The railing at the point of the accident is l6-l8 inches.

OSHA requires railing in a pedestrian work area to be much higher in range of 30-38 inches so as not to create a trip hazard. The railing in place at the time of the accident created a trip hazard. All of the installation was approved by Mike Vargas of Plains. If the railing had been at the proper height the accident would not have happened.

Appellees argue that Bair's theory that guardrails at the North Owens site violated OSHA standards was not supported by the evidence because OSHA standards did not apply and, despite Reynolds Energy's claim that Dianna tripped over a guardrail, no one saw how Dianna fell.

Our review of the record shows that when Bair signed Reynolds Energy's third amended answers to Interrogatory No. 3, Mills, Guerra, and Hayes had testified they did not see how Dianna fell. Hayes testified he saw Dianna lying on the ground inside the railing of LACT2 and was bleeding from her head. A state Worker's Compensation Claim in which a notation of how the accident occurred stated that "The employee [Dianna] was tripped by or fell over a railing hitting her head." A Plains Marketing's incident report written by Paul Paget, Plains Marketing's safety manager, dated December 20, 2019, stated that when the pressure release in Hayes's truck caused a loud noise, Dianna jumped back "and made contact with the railing, causing her to fall over backwards striking the back of her head."

We are again reminded that discovery was ongoing at the time Bair signed Reynolds Energy's third amended answers to Interrogatory No. 3. Based on the information available to Bair at the time he filed the amended answers, he had factual support to assert an OSHA violation theory. He reserved his right to amend that answer in the event other information surfaced as discovery progressed.

We conclude that Bair made a reasonable investigation on the OSHA standards that applied based on Plains Marketing's accident report and the worker's compensation claim. Therefore, we conclude that Reynolds Energy's OSHA theory of liability was not groundless.

We next address Appellees' allegations in their motion for sanctions that Bair signed Reynolds Energy's response to Plains Marketing's No-Evidence Motion for Summary Judgment in violation of Rule 13 and Chapter 10.

**F.     Reynolds Energy's Response to Plains Marketing's No-Evidence Motion**

On April 27, 2020, Plains Marketing filed its motion for no-evidence summary judgment against Dianna's claims.  On June 9, 2020, Reynolds Energy filed its response to that motion.  On June 10, 2020, Plains Marketing filed an amended motion for no-evidence summary judgment.  As stated, discovery was ongoing at that time, and Plains Marketing had refused to produce its employees for deposition and had quashed at least eight deposition notices despite the requests made by Bair as early as February 5, 2020.

*1.     Grounds in Plains Marketing's Motion for Sanctions*

In their sanctions motion, Appellees argued that Appellants and Bair violated Rule 13 and Chapter 10 when Bair signed the response to Plains Marketing's no-evidence motion for summary judgment because that response was supported by (a) Hayes's false deposition testimony, (b) a sham affidavit by a later de-designated expert, and (c) the affidavit that was signed by Reynolds Energy's other attorney, Marc Johnson, was filed with the purpose of delaying the litigation.

a.     Hayes's False Deposition Testimony

In their motion for sanctions, Appellees contended that when Hayes was deposed on January 28, 2020, and on February 21, 2020, he was not truthful.  Specifically, Appellees argued that Hayes falsely testified that (a) the vent line was clogged when the line was not clogged, (b) he reported to his employer that the vent was clogged, when there was no such report, (c) he routinely "vented to the air" despite that being a known EPA violation, (d) the guards authorized him "not to use the vapor recovery system, not to call Reynolds, not to advise Reynolds that the equipment

wasn't working and to vent to the atmosphere[,]" when that did not occur, and (e) he had no criminal convictions when subsequent evidence showed he did.

Appellees argued that despite Appellants and Bair knowing that Hayes testimony was false and amounted to perjury, Appellants included that testimony to oppose Plains Marketing's motion for summary judgment in violation of Rule 13 and Chapter 10.

In Reynolds Energy's response to Plains Marketing's no-evidence motion, Bair's reliance on Hayes's testimony was limited as follows:

> Further evidence of Plains negligence and premises liability are the two depositions of John Hayes, attached as Ex. 8. Reynolds' points specifically to pp. 186 line 3 - 187 line 17, in which he testified that he believed that Plains' vapor hose was defective. On page 218 line 9-13, he testified that he saw Ms. Marable laying inside the railing where she fell. On Page 413 line 1-21 he describes how the Plains vapor hose was left in the mud and would become clogged with mud and dirt. He further describes that the Plains vapor recovery system is a system that's not maintained well. It's left in the mud and the dirt over a period of time and continually takes on water and mud over a series of days, events, and people using it, hooking it to the back of their trailers, the air shoving it down in the system. (See, Ex. 8, page 415, line 8-17). Mr. Hayes further explained that it would be Plains responsibility to provide caps for the tip of the hose to keep mud and debris out, and to provide hooks so the hose does not just lay in the mud. (See, Ex. 8, page 425, line 16-25).

Contrary to Appellants contention, Bair did not include Hayes's testimony relating to reporting a clogged vent, routinely venting the air, guards authorizing him "not to use the vapor recovery system, not to call Reynolds, not to advise Reynolds that the equipment was not working and to vent the atmosphere" or that he had no criminal record to support Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment. Therefore, we will limit our review to the testimony cited in Reynolds Energy's response to the summary judgment motion (that the vents were clogged with mud and dirt).

In their sanctions motion, Appellees relied on the following evidence to support their contention that Hayes lied about the clogged vents: (a) Plains Marketing's station logs, (b) an e-

mail from the Flores Law Firm acknowledging that Hayes's deposition statements were false, and (c) Hayes's Responses to Requests for Admission signed by the Flores Law Firm.

Having previously concluded that, based on Hayes's and Guerra's testimony alone, Hayes's testimony that a cause of the accident was a clogged vent hose was not groundless. Now, based the evidence Appellants raised in their sanctions motion, we must determine whether that testimony is groundless, and if so, whether Rule 13 and Chapter 10 were violated.

(1)    Station Logs

The station logs show that from 3:00 a.m. on the day of Dianna's fall until 2:48 a.m. the following morning, fifty-eight drivers other than Hayes continuously loaded their tankers at the North Owens Station either before or after Hayes loaded his.

The record shows Bair had in his possession Plains Marketing's station logs when he filed Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment. The station logs themselves do not prove that because fifty-eight drivers continuously loaded their trucks before and after Hayes loaded his, Hayes's testimony was false. The logs only show there was a continuous stream of trucks loading crude oil before and after Hayes stopped loading his truck and that that continuous stream stopped when Hayes's turn came up and resumed after Dianna's fall.

The issue for our determination is whether, based on the logs, Bair should have further investigated the validity of Hayes's testimony before filing Reynolds Energy's response to Plains Marketing's motion for summary judgment.

As stated throughout our opinion, when Bair signed the response to the motion for summary judgment, discovery was ongoing. Bair made several attempts to investigate the validity of Hayes's theory of liability by asking for and noticing the depositions of Plains Marketing's employees, which its attorney either ignored or filed motions to quash.

For these reasons, we conclude that the station logs alone fail to prove that Hayes's testimony was false and groundless.

(2)     Flores Law Firm's E-mail

The e-mail, dated June 24, 2021, was a Rule 11 agreement from the Flores Law Firm to Appellees' attorney. In the e-mail, the Flores Law Firm agreed not to oppose a second motion for summary judgment Appellees were contemplating filing. The e-mail was not an acknowledgement that Hayes lied, as Appellees assert.

Because the e-mail was sent more than a year after Bair stopped representing Appellants and more than a year after Reynolds Energy's response was filed, the e-mail does not reflect the circumstances surrounding the signing of Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment.

The Flores Law Firm's e-mail alone does not prove Hayes lied at his deposition as Appellees assert or that Bair knew about it. It does not prove that Bair did not have the factual support for Reynolds Energy's response to Plains Marketing's summary judgment motion and was therefore groundless.

(3)     Hayes's Responses to Requests for Admission

As with the Flores Law Firm's June 24, 2021 e-mail, Hayes responded to Appellants' requests for admission more than a year after Bair signed Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment.

It is true that Hayes's admissions showed he was not truthful in his deposition about his criminal record. But such admissions were not relevant to the clogged vents and, even if they were relevant to his credibility, they were made more than a year after Bair signed Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment, and Hayes's responses do not reflect the circumstances surrounding Bair's inclusion of Hayes's testimony in that motion.

We conclude that the only evidence presented by Appellees that reflect the time and the circumstances surrounding the signing of Reynolds Energy's response to the motion for summary judgment were the station logs. The logs alone do not prove that Hayes's testimony was false.

b. Expert's Alleged Sham Affidavit

(1) Expert's Affidavit

Reynolds Energy provided an affidavit from Richard A. Gehse dated June 9, 2020. It stated in part as follows:

> This affidavit is based on preliminary information known and available to me at this time through my investigation and through documents and other materials reviewed by me. I reserve the right to supplement or amend this affidavit, or the statements and preliminary opinions made herein, based on additional information, including information that may become available from witnesses and other parties as this dispute proceeds.

Gehse's affidavit was dated the same day that Reynolds Energy filed its response to Plains Marketing's no-evidence motion for summary judgment. As stated, at that time, discovery was ongoing.

(2) Allegation of Sham Affidavit

In its motion for sanctions, Appellees contended that Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment included Gehse's "sham affidavit," which contained nothing but false and unsupported allegations including (a) improper grading at the site that could cause water to accumulate or someone to fall, (b) a vapor recovery system hose that had design defects that caused the hose to clog, and (c) railing around the unit that did not conform to OSHA standards.

To support their contentions relating to Gehse's affidavit, Appellees offered the following evidence: (a) Reynolds Transportation's June 30, 2021 responses to 239 requests for production, (b) Appellants and Hayes's responses to requests for admission and Appellants' de-designation of

Gehse as an expert, (c) photographs of the area showing there was no uneven surface, and (d) weather precipitation reports that showed that virtually no rain fell in the area for the three months prior to Dianna's fall. In further support, they asserted that OSHA standards on railing systems were not applicable because the undisputed evidence was that no one saw Dianna fall.

(3)     Gehse's Affidavit was Not a Sham Affidavit

Appellees argued that Appellants' production of documents and their admissions made on June 30, 2021, proved that Gehse's affidavit was a sham.

A sham affidavit is one in which the affiant creates a fact issue with a statement that is contrary to affiant's prior sworn statement and made for the purpose of preventing a summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85, 61 (Tex. 2018). In this instance, there is no evidence that Gehse contradicted any prior sworn statement. Therefore, we will not label Gehse's affidavit as a sham affidavit.

(4)     Reynolds Energy's June 30, 2021 Responses to Plains Marketing's Discovery Requests and De-Designation of Gehse

Appellees contended that Gehse's statements were false or unsupported by the evidence because he relied on facts that Appellants and Hayes later admitted were false. The record reflects that Appellants' and Hayes's admissions were made a year and days after Bair filed Reynolds Energy's response to the motion for summary judgment.

As stated, we agree that Hayes's admissions made on June 28, 2021, showed he was not truthful in his deposition. It is also true that Reynolds Transportation's admissions dated June 30, 2021, show Appellants did not have a cause of action against the Plains companies and that they de-designated Gehse as an expert. But such evidence does not prove that at the time Bair signed Reynold Energy's response to Plains Marketing's motion for summary judgment he knew that Hayes's testimony was false. The record contains no evidence of such knowledge. Appellants'

admissions and expert de-designation simply do not reflect the circumstances surrounding Bair's inclusion of Hayes's testimony when he signed Reynolds Energy's opposition to Plains Marketing's motion for summary judgment.

Admissions made more than a year after Bair signed Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment do not show the circumstances surrounding the signing of that response. Such admissions do not take into consideration that at the time it was signed, discovery was ongoing, and Plains Marketing had stalled in presenting its witnesses for deposition. Most importantly, such admissions are not evidence that Reynolds Energy's response was not factually supported and groundless, or that Bair acted in bad faith or for harassment or delay purposes.

For the same reasons, requests for production made a year after Bair signed the response to Plains Marketing's no-evidence motion for summary judgment are not evidence of the circumstances surrounding Bair's signing the response to Plains Marketing's no-evidence motion for summary judgment.

### (5)    Surface Grading, Weather Report, OSHA Standards

The Plains companies contended that Gehse made false statements in his affidavit because photographs of the area showed there was no uneven surface; the weather reports showed that virtually no rain had fallen in the area in the three months prior to Dianna's fall; and OSHA standards on railing systems were not applicable because the undisputed evidence is that no one saw Dianna fall.

We are reminded again that at the time Gehse signed his affidavit, discovery was ongoing, Plains Marketing had refused to produce its employees for deposition despite requests by Bair, and Gehse affirmed that his opinions were based on preliminary information to be supplemented or amended as additional information became available.

In his affidavit, Gehse opined that "the North Owens site grading was improper, increasing the risk that someone would lose their balance and fall." Appellees argue that photographs of the site show otherwise. We disagree.

Photographs of the North Owens station admitted by the trial court show different surface gradings surrounding the valve system. Some show even grading, others show loose gravel mounds around the valve system and its vicinity, and others show unleveled grading. Some photographs were admitted into evidence, and others were produced at depositions.

Based on the photographs, Appellees' conclusion that Gehse's opinion on improper grading was false or unsupported by evidence is refuted by the evidence.

Appellees contended that Gehse's opinion was also false because at the time he signed his affidavit, Bair had the weather precipitation reports available to him that showed virtually no rain had fallen at the site for three months preceding Dianna's fall.

In reviewing the affidavit, we note that Gehse's affidavit did not state that Dianna fell as a result of rain. Instead, his opinion dealt with a failure to maintain walking and working surfaces that resulted in improper grading when "the tanker truck loading areas would accumulate rainwater creating mud puddles resulting in uneven and difficult walking and working surfaces and trip hazards."

Based on Gehse's affidavit alone, Appellants' conclusion that Gehse's opinion was false because the weather reports showed it had not rained at the site is not supported.

Appellants further contended that the evidence at the time Gehse signed his affidavit showed that no one saw Dianna fall, but Gehse falsely wrote that Dianna tripped over the guardrail. As we previously stated, Plains Marketing's records show that Dianna "tripped by or fell over a railing hitting her head" or that Dianna jumped back "and made contact with the railing, causing

her to fall over backwards striking the back of her head." Hayes's uncontroverted testimony places Dianna's body inside the railing after her fall.

Based on Appellees' own evidence, Appellees' argument that Gehse's affidavit is false because the OSHA standards did not apply as no one saw Dianna fall is not supported by the evidence available at the time Gehse gave his opinions.

Appellees further contended that Gehse falsely testified that Plains Marketing's vapor recovery system hose had design defects that caused the hose to clog. Gehse opined that vapor recovery system hoses were exposed to the entry of dirt, mud, or other non-vapor materials because (a) Plains did not have a hanger mechanism to store the hose elevated and off the ground and (b) when not in use, hoses were allowed to rest on the ground. Gehse further opined that hoses did not have an end cap to prevent foreign material from entering the vapor recovery system.

Photographs of the North Owens stations taken on December 17, 2018, show the absence of a mechanism to store the hoses off the ground and show recovery hoses on the ground. Other undated photos admitted into evidence show the same recovery hoses on the ground and no storing mechanism. Appellees' contention that Gehse's opinion was false is not supported by the photographs in evidence.

We conclude that Gehse's affidavit was not a sham and that his opinions had factual support and were not false.

### c. Johnson's Affidavit

Marc Johnson signed an affidavit on June 9, 2020, to support Reynolds Energy's response to Plains Marketing's motion for summary judgment. The affidavit stated in part as follows:

> Plains' Motion for No-Evidence Summary Judgment is premature as significant amount of discovery remains yet to be conducted, including specifically the deposition of at least eight employees of Plains that Plains has sought to quash. . . .

Reynolds has been requesting depositions of certain Plains employees since as early as February 5, 2000. To date, Plains has refused to present any witnesses for depositions, despite the fact that Plains has identified the following witnesses as person with knowledge of relevant facts in their Responses to Requests for Disclosure:

> [Names of persons]

. . . . After Plains refused to voluntarily set any depositions of Plains' employees, Reynolds[] noticed depositions of eight Plains employees on April 20, 2020. Plains filed a Motion to Quash those depositions. Reynold[s] filed a response and Motion to Compel those depositions. Those Motions are set for hearing on June 16, 2020. Thus, Reynolds has exercised due diligence [in] seeking the depositions and other evidence required for supporting its contentions against Plains and which is needed to respond to Plains Motion for Summary Judgment.

In its motion for sanctions, Appellees contended that this affidavit was written "in an effort to obstruct summary judgment" and to delay trial.

We previously concluded that at the time the response to the summary judgment motion was signed, discovery was ongoing. Our conclusion was supported by the string of e-mails dated from February 5, 2020, to June 6, 2020, between Appellees' attorney and Reynolds Energy's attorneys, Bair and Johnson, which showed that Bair and Johnson asked to depose Plains Marketing's employees. The record also showed Plains Marketing did not produce its employees for deposition even after being ordered to do so by the trial court. We therefore conclude that Johnson's affidavit was not filed for delay purposes, but as evidence that discovery was ongoing.

## G. Reynolds Energy's April 27, 2020 Cross-Action against Plains

On April 27, 2020, the same day Plains Marketing filed its no-evidence motion for summary judgment, Reynolds Energy and Hayes filed a cross-action against Plains Marketing. The cross-claim, signed by Johnson, sought a contribution claim against Plains Marketing under

Chapters 32 and 33 of the Texas Civil Practice and Remedies Code, the doctrine of comparative causation, and all applicable statutes and common law.[8]

### 1. Parties' Arguments

Appellants contend that Appellees had no proof of groundless, bad faith, or improper motive on any of the pleadings challenged in Appellees' motion for sanctions.

In their sanctions motion, Appellees contended the cross-claim filed by Johnson was frivolous and malicious and filed in contravention of Rule 13 because it was based on false allegations. In support, Appellees argue that on April 16, 2021, Appellants and Hayes nonsuited their cross actions.

The sanctions motion does not identify the "false allegations" relied on by Appellees. In their brief, however, Appellees contend that the cross-claim was not supported by the facts since no one saw Dianna fall and that any opinion that the vapor recovery hose was clogged with mud or debris was pure speculation. In support, Appellees identify (a) Appellants' nonsuit filed by the Flores Law Firm, and (b) the depositions of Hayes, James White, and Charles Mills.

In their motion, the Plains companies only asserted a violation of Rule 13. Therefore, we will limit our review to that rule.

### 2. The Nonsuit

Appellees' reliance on Appellants' nonsuit, alone, does not prove that, at the time Johnson filed the cross-actions he acted in bad faith, with an improper motive, or filed the document for harassing purposes.

---

[8] The clerk's record shows that Reynolds Transportation filed two other cross-claims on February 2, 2021: one against Plains American Pipeline and the other against Plains Pipeline. But these cross-claims were not included in the Plains companies' sanctions motion. Nonetheless, these cross-claims are identical to the one filed in April.

Evidence that a party subsequently nonsuited its claims against another party does not evidence what transpired at or near the time Johnson filed the cross-actions. *See Cherry Peterson Landry Albert LLP v. Cruz*, 443 S.W.3d 441, 454 (Tex. App.—Dallas 2014, pet. denied) (plaintiff's act of nonsuiting action, standing alone, is not evidence action is brought in bad faith since any party has the right to nonsuit without consideration to the merits of the case); *see also Barnes v. Kinser*, 600 S.W.3d 506, 510 (Tex. App.—Dallas 2020, pet. denied) (noting a judge may not impose sanctions based on the legal merit of a pleading or motion, instead, the focus is on the conduct of the party or lawyer at the time the pleading was filed).

Therefore, there being no evidence that Johnson filed the April 27, 2020 cross-action in bad faith or for harassing purposes, we conclude that the nonsuit alone does not support Appellees' contention that the cross-claim was filed in violation of Rule 13.

3. *Depositions of Hayes, White, and Mills*

White was deposed in December of 2020, months after Johnson filed the April 27, 2020 cross-action. Accordingly, White's testimony does not shed light on the circumstances surrounding the signing of the April 27, 2020 cross-claim. For this reason, we will not consider White's testimony.

As to Hayes's deposition testimony on the clogged vent hose, we previously concluded that his testimony was not groundless. Here, we conclude that, based on Hayes's and Mills's depositions, there is no evidence that Johnson acted in bad faith or for harassing purposes when he filed Reynolds Energy's and Hayes's April 27, 2020 cross-action.

## H. Conclusions

For the reasons stated above, and considering the circumstances surrounding the signing of the third amended answers to Interrogatory No. 3, the response to Plains Marketing's no-

evidence motion for summary judgment, and the April 27, 2020 cross-claim, we reach the following conclusions.

- Reynolds Energy's liability theory in its third amended answers to Interrogatory No. 3 that Plains Marketing was liable because Mills and Dianna were not licensed is groundless. By attaching Reynolds Energy's third amended answers to Interrogatory No. 3 as an exhibit to Reynolds Energy's response to the summary judgment, Bair violated section 10.001(3) of the Texas Civil Practice and Remedies Code, but only to the extent that it asserted that Mills and Dianna were not licensed. We further conclude that the evidence was legally insufficient to show that by incorporating this theory of liability to Reynolds Energy's response to the summary judgment, Bair acted in bad faith or for harassing purposes. Therefore, we conclude that Bair did not violate Rule 13.

- Reynolds Energy's other liability theories challenged by Appellees were not groundless.[9] Therefore, Bair did not violate Chapter 10 of the Texas Civil Practice and

---

[9] Reynolds Energy's the theories of liability contained in Reynolds Energy's third amended answers to Interrogatory No. 3 were:

1. Plains was involved in the design, procurement and directed construction of the LACT and Scrubber system and gave final approval for same. Any defects or problems with the design, construction or operations are the responsibility of Plains.

2. Plains failed to allow for normal operating conditions LACT and Scrubber such that the Scrubber jammed up and caused not only the failure of vapor recovery system (VRS) but backpressure into the lines on multiple occasions causing a shutdown of the VRS.

3. Plains did not take proper operational precautions (from a simple cap or hanger to other options) to prevent the jamming of the Scrubber system in that they allowed, after usage by oil tankers, the end of the vapor recovery hose to fall into the dirt, mud, water and rocks allowing it to clog and jam the Scrubber system which was designed to chemically scrub out hydrocarbons from vapor, not water, mud, dirt and rocks.

4. Plains had created "Plains All American Pipeline-Guidelines for Guards" dated June 27, 2016, that the guards were to follow at North Owens. The files of Mills and Marable are devoid of any evidence that they were ever trained on these requirements or that Plains ever required Timekeepers to do so. We have independent evidence verifying multiple failures of the vapor recovery system yet Plains has failed to produce a single "observational report" regarding same as required by their own Guidelines. This is despite Mike Vargas and James McIntyre of Plains being onsite and personally witnessed problems with the vapor recovery system as well as relief valve pop-offs on trucks.

5. Plains contracted with John Meador Construction to do repairs and some of the installation of the LACT and Scrubber but was directed and controlled by Mike Vargas of Plains. That would have been a good time to allow for something to protect and store the vapor recovery hose.

6. Plains contracted with Quality Pipeline Construction to do the initial install of the LACT, Scrubber and railing. Work invoice says all work is being done as directed by Jimmy McKee of Plains. The railing at the point of the accident is l6-l8 inches. OSHA requires railing in a pedestrian work area to be much higher in range of 30-38 inches so as not to create a trip hazard. The railing in place at the time of the accident created a trip hazard. All of the installation was approved by Mike Vargas of Plains. If the railing had been at the proper height the accident would not have happened.

7. Plains was the only source of any air that came out of side vent. All pressure in the oil tank trailer had equalized and was static. The Vapor Recovery System was jammed up and prevented Hayes from loading. Guerra was loading at LACT One and was hooked up to the same VRS. The air vapor from his trailer would have gone

Remedies Code when attaching the other theories set forth in Reynolds Energy's third amended answers to Interrogatory No. 3 as an exhibit to Reynolds Energy's response to the motion for summary judgment. We further conclude that the evidence was legally insufficient to show that by incorporating the other theories of liability to Reynolds Energy's response to the summary judgment, Bair acted in bad faith or for harassing purposes. Therefore, we conclude that Bair did not violate Rule 13.

- The facts Gehse relied on for his opinion were not groundless. Therefore, Bair did not violate section 10.001 of the Texas Civil Practice and Remedies Code by including Gehse's affidavit in support of Reynolds Energy's response to the motion for summary judgment. We further conclude that the evidence was legally insufficient to show that by incorporating Gehse's affidavit into Reynolds Energy's response to the summary judgment, Bair acted in bad faith or for harassing purposes. Therefore, we conclude that Bair did not violate Rule 13.

- We conclude that Johnson's affidavit was not groundless. Bair did not violate section 10.001 of the Texas Civil Practice and Remedies Code by including Johnson's affidavit in support of Reynolds Energy's response to the motion for summary judgment. We further conclude that the evidence was legally insufficient to show that by incorporating Johnson's affidavit into Reynolds Energy's response to the summary judgment, Bair acted in bad faith or for harassing purposes. Therefore, we conclude that Bair did not violate Rule 13.

- We conclude that the April 27, 2020 cross-claim was not groundless. Because the evidence was legally insufficient to show that when Johnson filed the April 27, 2020 cross-claim he acted in bad faith or for harassing purposes, we conclude that Johnson did not violate Rule 13.

We now turn to the trial court's order and findings.

## TRIAL COURT'S ORDER

The trial court's order sanctions Reynolds Energy and Reynolds Transportation for violations of Chapter 10 and Rule 13. The order provides in part as follows:

> The court's ruling and this Order are based on the court's review of the pleadings and submissions of all parties including review of those exhibits attached

---

into a piping system connected to T721 and due to the Scrubber being jammed the vapor back pressure took the path of least resistance and came out the side vent valve. T721 was between Guerra and the Scrubber.

8. Plains failed to assure that Mills and [Dianna] had the proper training and licensure to do their job as noncommissioned security guards. Texas requires such licensure and training but neither Mills nor [Dianna] were properly licensed or trained.

9. Plains failed to monitor and supervise Mills and [Dianna] regarding compliance and creating documentation in accordance with Plains own policies and procedures including but not limited to creating observational reports and documenting any problems or concerns that arose with regard to operations or safety.

to the pleadings which were cited to this court and the exhibits already on file among the papers of this court which are incorporated by reference in the submissions. . . .

. . . .

Accordingly, upon review of the submitted documents as previously stated and upon hearing arguments of counsel, this court agrees with counsel for PLAINS that certain filings, including but not limited to the REYNOLDS'[s] Original and Amended Answers, Response to PLAINS' Motion for Summary Judgment and its attendant affidavits, REYNOLDS'[s] discovery requests and responses and REYNOLDS['s] Rule 11 Agreement, that its allegations against PLAINS were unsupported by any evidence, and that such conduct during the pendency of the litigation is subject to sanctions pursuant to TRCP 13 and TCPRC 10. Accordingly, after considering Cross-Plaintiff, PLAINS, *et al*'s Motion for Sanctions with Exhibits, Defendants' and their attorney's response, PLAINS' Reply, and the evidence and arguments presented at oral hearing, the Court GRANTS the motion and AWARDS sanctions against REYNOLDS in the amounts, and for the reasons, set forth below:

1. The Court awards sanctions to PLAINS against REYNOLDS . . . in the amount of $428,895.92 . . . which number was calculated from February 1, 2020, which date the documents reflect REYNOLDS'[s] unsupported frivolous and unmeritorious claims against PLAINS. . . . [G]ood cause exists to impose these sanctions from that date, as explained below.

The trial court's order also contains twenty-one findings; each is discussed separately below.

## A.      Parties' Arguments

Appellants argued that each finding lacks an evidentiary basis, is conclusory, or grants relief not requested in the motion for sanctions. Appellants also argue that because Reynolds Transportation was not a party at the time the challenged documents were signed or filed, sanctions against it were not proper.

Appellees argue the trial court did not abuse its discretion in granting the sanctions motion pursuant to Chapter 10 and Rule 13 where the record contains evidence demonstrating Reynolds Energy's sanctionable conduct, including (a) failing to undertake a reasonable inquiry before filing pleadings for an improper purpose that contained allegations lacking evidentiary support, and (b) serving written discovery responses that were groundless and brought in bad faith.

Appellees further argue that Reynolds Transportation waived any contention that it was not a party. According to Appellees, Appellants waived such contention because (a) the Flores Law Firm responded to the motion for sanctions and collectively referred to the two entities as the "Reynolds Defendants" and (b) at the sanctions hearing, Appellees did not argue the entities were distinct. Appellees conclude that the collective reference to the Reynolds entities is warranted as both entities were represented by the same defense counsel, and both relied on the same defensive theories.

### B. Exhibits Admitted at Sanctions Hearing

At the sanctions hearing, the trial court admitted the following documents and exhibits contained within those documents:

- The deposition transcripts of James White, Jesse Guerra, Charles Mills, Mike Vargas, and John Hayes.

- Reynolds and Hayes's second amended answer and cross-claim against Plains Marketing signed by Reynolds Energy's former attorneys.

- Reynolds Energy's discovery responses, including the third amended answers to Dianna's Interrogatory No. 3, signed by Bair.

- Reynolds Energy's response to Plains Marketing's motion for no-evidence summary judgment and its opposition to Plains Marketing's motion for leave to amend its no-evidence motion for summary judgment, all signed by Bair.

- Reynolds Energy's cross-claim for contribution against the Plains pipeline companies signed by Johnson.

- Hayes's June 28, 2021 responses to requests for admission signed by the Flores Law Firm.

- Reynolds Transportation's June 30, 2021 admissions in which it acknowledged that "there were no issues of any kind at the [the Plains location] that in any way caused or contributed to [Dianna]'s claims," which admissions were signed by the Flores Law Firm.

- Reynolds Transportation's responses to Plaintiff's 9th set of requests for admission signed by the Flores Law Firm.

- Reynolds Energy's third amended responses to requests for disclosure and designation of experts signed by the Flores Law Firm.

- Hayes and Reynolds Energy's amended responses to discovery signed by the Flores Law Firm.

- Plains Marketing's station logs and table of payments made to various entities.

- Plains Marketing's Motion for Summary Judgment and exhibits (only Reynolds Energy and Hayes parties).

- Plaintiff's Original Petition (sued Reynolds Energy and Plains Marketing)

- Plaintiff's Second Amended Petition (added more defendants, including Reynolds Transportation).

- Plaintiff's response to Plains Marketing's motion for summary judgment.

- David Smith's and Dagmar Buzerman's expert reports dated June 25, 2021.

- Plains Marketing's guidelines on guardrails.

- Photographs of the site.

- Plains Marketing's answers to Reynolds Energy's first set of interrogatories.

- John E. Meador Construction invoices.

- Quality Pipe Construction's invoices.

## C.    Applicable Law

Rule 13 only applies to the party or the attorney signing a pleading, motion, or other paper and an attorney representing a party. TEX. R. CIV. P. 13. A non-party is not amenable to sanctions under Rule 13. *Exoxemis, Inc. v. Seale*, No. 04-95-00673-CV, 1996 WL 471271, at *6 (Tex. App.—San Antonio Aug. 21, 1996, no writ) (mem. op., not designated for publication); *see Tex. Attorney Gen.'s Office v. Adams*, 793 S.W.2d 771, 775 (Tex. App.—Fort Worth 1990, no writ).

Under Chapter 10, sanctions can be imposed on the person signing the pleading, a party represented by the person, or both, but monetary sanctions cannot be awarded "against a represented party for a violation of Section 10.001(2)." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004.

A party should not be sanctioned for its attorney's conduct "unless the party is implicated apart from having entrusted its legal representation to counsel." *Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 349 (Tex. App.—San Antonio 2006, pet. denied).

Under Rule 13, the trial court may not impose sanctions unless there is "good cause, the particulars of which must be stated in the sanction order." TEX. R. CIV. P. 13. The particularity requirement requires the trial court to include its findings in the order. *Graves v. Diehl*, No. 01–00–00412–CV, 2006 WL 1699527, at *3 (Tex. App.—Houston [1st Dist.] June 22, 2006, pet. denied) (mem. op.) (citing *Murphy v. Friendswood Dev. Co.*, 965 S.W.2d 708, 709 (Tex. App.—Houston [1st Dist.] 1998, no pet.)); *see Loeffler*, 211 S.W.3d at 349.

The same requirement is found in Chapter 10, under which "[a] court *shall* describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (emphasis added); *see Loeffler*, 211 S.W.3d at 349.

A trial court's finding that only recites the ultimate conclusion, without the facts that support that conclusion, is conclusory and does not support the "particularity" or "explanation" required under Rule 13 and Chapter 10. *See Spitaleri v. Estate of Dominguez*, No. 04-04-00441-CV, 2005 WL 2988732, at *3 (Tex. App.—San Antonio Nov. 9, 2005, pet. denied) (mem. op.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."); *Overman v. Baker*, 26 S.W.3d 506, 511–12 (Tex. App.—Tyler 2000, no pet.).

Finally, as we stated above, imposing sanctions on a party on grounds not asserted in a motion for sanctions violates that party's due process rights. *See In re Champagne*, No. 03-21-00426-CV, 2021 WL 4976719, at *2 (Tex. App.—Austin Oct. 27, 2021, orig. proceeding) (mem. op.); *Clark v. Bres*, 217 S.W.3d 501, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *In re L.A.M. & Assocs.*, 975 S.W.2d 80, 83 (Tex. App.—San Antonio 1998, orig. proceeding); *see also Polansky v. Berenji*, 393 S.W.3d 362, 369 (Tex. App.—Austin 2012, no pet.); *Greene v. Young*, 174 S.W.3d 291, 298–301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

**D.    Reynolds Transportation Not a Party**

We first address Appellants' contention that Reynolds Transportation was not a party at the time Reynolds Energy signed the challenged documents.

In her second amended petition, Dianna sued Reynolds Transportation, Inc.; Plains All American Pipeline, L.P.; and Plains Pipeline, L.P.  She filed her second amended petition on May 29, 2020.  Reynolds Transportation did not make an appearance until July 13, 2020, when it filed its answer to Plaintiff's Second Amended Petition.  Plains All American Pipeline and Plains Pipeline did not answer the lawsuit until August 3, 2020.

Reynolds Energy's attorneys signed the challenged documents as follows: (a) the third amended answers to Interrogatory No. 3, on April 28, 2020; (b) the response to Plains Marketing's no-evidence summary judgment motion, on June 9, 2020; and (c) the cross-action, on April 27, 2020.

Because Rule 13 and Chapter 10 only apply to parties, and Reynolds Transportation was not a party at the time the challenged documents were filed, we conclude that the trial court abused its discretion by imposing sanctions on Reynolds Transportation.  *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001, .004.  For the same reasons, we conclude the trial court abused its discretion by awarding sanctions to Plains All American Pipeline and Plains Pipeline. TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001.

We turn now to the trial court's findings.

**E.    Trial Court's Findings**

Appellants suggest we first address the trial court's last twenty findings.  We agree.  For clarity, we will address each separately.

*Finding 2:    Pleadings that Violated Rule 13 and Chapter 10*

The second finding reads in its entirety as follows:

2.    The Court finds that the following pleadings, writings and motions filed with this Court violated Rule 13 and Chapter 10:

> *a. REYNOLDS Response to PLAINS' Motion for Summary Judgment, exhibits and, the affidavits filed in support thereof;*
> *b. REYNOLDS' 2nd Amended Original Answer;*
> *c. REYNOLDS' Responses to PLAINS' written discovery requests;*
> *d. REYNOLDS' Answer and affirmative defenses against PLAIN'S counterpetition;*
> *e. REYNOLDS, Answer to Plaintiff's 2nd set of Interrogatories*
> *f. REYNOLDS' 2nd Supplemental Responses to Plaintiff's interrogatories*

Appellants argue the trial court was not authorized to impose sanctions on pleadings or documents not challenged in the sanctions motion.   Appellants contend Appellees did not challenge Reynolds Energy's second amended original answer, Reynolds Energy's responses to Plains Marketing's written discovery requests, Reynolds Energy's answers and affirmative defenses against Plains Marketing's counterpetition, Reynolds Energy's answer to Plaintiff's second set of interrogatories, and Reynolds Energy's second supplemental answer to Dianna's interrogatory.

Appellees respond that with respect to "*REYNOLDS' 2nd Supplemental Responses to Plaintiff's interrogatories*" the order has a typographical error; instead of "*2nd*" it should have been "*3rd*." They argue that Appellants were on notice that Appellees were moving for sanctions on Reynolds Energy's third supplemental answer to Interrogatory No. 3, which at the sanctions hearing was offered and admitted into evidence.   Appellees conclude that Reynolds cannot "sincerely argue it was not on notice" that Appellants were moving for sanctions on the third amended answers to Interrogatory No. 3.

We agree with Appellees that their sanctions motion included Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3, and we conclude that the trial court's order has

a typographical error. Appellees' sanctions motion dealt with the third amended answers and at the hearing, the parties made reference to only those answers.[10]

But we also agree with Appellants that the following documents were not included in Appellees' sanctions motions: Reynolds Energy's second amended original answer, Reynolds Energy's responses to Plains Marketing's written discovery requests, Reynolds Energy's answer and affirmative defenses against Plains Marketing's counterpetition, and Reynolds Energy's answer to Plaintiff's second set of interrogatories.

A trial court cannot sanction a party on a basis not identified in a motion for sanctions. *In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Mann v. Kendall Home Builders Construction Partners I, LTD*, 464 S.W.3d 84, 93 (Tex. App—Houston 14th Dist. 2015, pet. denied); *Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301. Therefore, the trial court had no authority to sanction Reynolds Energy based on those documents.

We conclude the trial court only had the authority to sanction Reynolds Energy for (1) Reynolds Energy's Response to Plains Marketing Motion for Summary Judgment, and the exhibits and affidavits filed in support of that motion, and (2) Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3.

Our analysis does not end here. In Finding 2, the trial court failed to describe with particularity the conduct that violated Rule 13 and Chapter 10 associated with the response to Plains Marketing's no-evidence motion for summary judgment and Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3. Instead, the trial court's Finding 2 only recites the ultimate conclusion without supporting facts. *See Spitaleri*, 2005 WL 2988732, at *3.

---

[10] We note that the trial court did not include Reynolds Energy's April cross-action in its order.

Therefore, we conclude that Finding 2 is conclusory to the extent that it finds that Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment and Reynolds Energy's third amended answers to Interrogatory No. 3 violated Rule 13 and Chapter 10.

> *Finding 3:    Witnesses Who Gave False Testimony at Depositions, Served False Errata Sheets, and Relied on False Testimony When Responding to All Parties' Written Discovery*

The trial court's third finding reads in its entirety as follows:

> 3.      The Court finds that REYNOLDS'[s] witnesses, Hayes, Thigpen, and White, offered testimony at their depositions which they knew to be false. REYNOLDS also knew that their testimony was false. Thigpen, Hayes and White served and signed *errata* sheets which did not correct the false testimony. Hayes and White attested that the vapor recovery system at the PLAINS North Owens station "never worked", forcing them to vent to the atmosphere. These statements are contradicted by their own actions and deposition testimony. REYNOLDS adopted these false statements when responding to all parties' written discovery requests. The Court finds that REYNOLDS ratified the declarations described above knowing that they contained multiple untrue statements. Sanctions are appropriate for this misconduct pursuant to Chapter 10 and Rule 13.

Appellants argue that Appellees' sanctions motion does not refer to Thigpen's and White's testimony and to false errata sheets. We agree with Appellants. The errata sheets were not challenged or mentioned in the sanctions motion and were also not introduced into evidence at the sanctions hearing. Thigpen's and White's deposition testimony was not challenged in Appellees motion for sanctions. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301. Therefore, the trial court had no authority to include Thigpen's or White's deposition testimony and the errata sheets in its sanctions order. The only deposition testimony referenced in Finding 3 that was at issue in Appellees' sanctions motion was Hayes's testimony.

In addition, any reliance by the trial court on Thigpen's and White's deposition testimony is misplaced since their depositions took place months after the response to the summary judgment and the third amended answers to Interrogatory No. 3 were filed. Only those facts that evidence

the circumstances surrounding the signing of those documents are considered when assessing sanctions under Rule 13 and Chapter 10.

Appellants next argue that the "all the parties' written discovery requests" were also not raised in Appellees' sanctions motion. We again agree with Appellants. The only written discovery at issue in the sanctions motion was Reynolds Energy's third amended answers to Interrogatory No. 3. Accordingly, the trial court had no authority to include Appellants' responses to "all the parties' written discovery requests" in its sanctions order.

As to the third amended answers to Interrogatory No. 3, we previously concluded that filing Reynolds Energy's third amended answers to Interrogatory No. 3 was not sanctionable under Chapter 10 because it was not a pleading or a motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. Therefore, the trial court had no authority to sanction Appellants for violations of Chapter 10 regarding the third amended answers to Interrogatory No. 3.

As to the trial court's finding that Hayes's statement that the vapor recovery system at the North Owens station "never worked," forcing him to vent to the atmosphere, we previously concluded that this statement was not included in Reynolds Energy's response to the motion for summary judgment. Therefore, the trial court had no authority to sanction Appellants for violation of Chapter 10 based on this statement.

Lastly, the trial court's finding that Appellants ratified the "declarations described above knowing they contained multiple untrue statements" is not supported by any facts and is therefore conclusory. *See Loeffler*, 211 S.W.3d at 349.

We conclude the trial court abused its discretion in making Finding 3.

*Finding 4:    Hayes Falsely Testified Regarding His Past Criminal Convictions*

The trial court's fourth finding reads in its entirety as follows: "REYNOLDS' driver, Hayes, testified falsely regarding past criminal convictions."

In their sanctions motion, Appellees contended that Hayes was not truthful about his past criminal convictions because on June 28, 2021, Hayes responded to requests for admission where he admitted he had criminal convictions.

However, for purposes of the trial court's sanctions order, Hayes is not being sanctioned, only Appellants are. So, this finding should only apply if followed by an explanation and factual support on how it impacted the signing of Reynolds Energy's third amended answers to Interrogatory No. 3 or Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment. Because such an explanation was not made, we conclude that Finding 4 does not meet the particularity requirement of Rule 13 and the explanation requirement under section 10.005. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.005; *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 411 (Tex. App—Houston [1st Dist.] 2005, pet. denied) (citing *Rudisell v. Paquette*, 89 S.W.3d 233, 237 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.)).

> *Finding 5:* *Reynolds Failed to Reasonably Investigate the Law and Facts Regarding Certain Allegations*

The trial court's fifth finding reads in its entirety as follows:

> 5. Reynolds failed to reasonably investigate the law and facts asserted in several material respects. The evidence shows that REYNOLDS alleged that PLAINS failed to properly train and confirm the licensure of the Guard One employee prior to her injury. Such allegation is completely false: The evidence showed that REYNOLDS knew in January 2020 at Mills['s] deposition that [Dianna] had been trained by her employer and was fully licensed as a non-commissioned security guard. Not only had this evidence been documented through discovery, licenses such as that held by [Dianna] were posted on line and could be verified, as was shown to REYNOLDS by PLAINS. Failure to investigate the law and the facts concerning [Dianna] justified the imposition of sanctions against REYNOLDS under Chapter 10 and Rule 13. Indeed, these kinds of inquiries are precisely the kind of "reasonable inquiry" required by Chapter 10 and Rule 13.

Although not noted in the trial court's order, this finding is based on one of the theories of liability found in Reynolds Energy's third amended answers to Interrogatory No. 3, which alleged that "Plains failed to assure that Mills and [Dianna] had the proper training and licensure to do their job as noncommissioned security guards. Texas requires such licensure and training but neither Mills nor [Dianna] were properly licensed or trained."

As stated previously, only Rule 13 applies because interrogatories are not pleadings or motions. TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. Therefore, to the extent the trial court's award was made pursuant to Chapter 10, the award is not valid.

Under Rule 13, failure to make an inquiry *alone* is not sanctionable. To be sanctionable, Rule 13 requires an additional finding of groundless and bad faith or for an improper purpose. We previously concluded that Reynolds Energy's liability theory that Plains Marketing failed to *assure* that Mills had the proper training and licensure to do their job was not groundless. But we also concluded that Reynolds Energy's liability theory that neither Mills nor Dianna was licensed was groundless.

But Rule 13 also requires a finding of bad faith or improper purpose. There was no evidence that Bair acted in bad faith or for an improper purpose. Therefore, we conclude there is legally insufficient evidence to support the trial court's Finding 5.

> *Finding 6:    Signing of Pleadings and Motions that Plains was Liable for Dianna's Injuries*

The trial court's sixth finding reads in its entirety as follows:

> 6.      Signing of pleadings and motions repeating the same untrue claims (that is, that PLAINS was liable for injuries to [Dianna]) that had been alleged by Plaintiffs in their original Petition, which—according to Plaintiff's pleadings—had been pled because, on the same night as the injury, Plaintiffs' counsel was told that REYNOLDS' [sic] was going to blame PLAINS. REYNOLDS never developed any evidence to support that allegation and had not undertaken any investigation or examination on the night of the injury that would justify making such a claim.

Accordingly, sanctions against REYNOLDS are appropriate under Chapter 10 and Rule 13.

In their motion for sanctions, the only pleadings Appellees challenged were Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment and Reynolds Energy's and Hayes's April 27, 2020 cross-action against Plains Marketing. Accordingly, the trial court was not authorized to include all of Reynolds Energy's other pleadings and motions in Finding 6. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

We previously concluded that Dianna's pleadings were not evidence. *See In re Elamex, S.A. de C.V.*, 367 S.W.3d 891, 898 (Tex. App.—El Paso 2012, no pet.). Therefore, the trial court was not authorized to consider any contents in Dianna's pleadings in support of its sanctions. Without such evidence, the trial court's finding that Appellants failed to develop evidence and failed to undertake any investigation on the night of the accident lacks the particularity requirement of Rule 13 and the explanation requirement of section 10.005. *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.005. Therefore, the trial court's Finding 6 is conclusory because it lacks the factual support to sanction Appellants.

Moreover, we previously concluded that the circumstances surrounding the signing of Reynolds Energy's response to the motion for summary judgment and the April 27, 2020 cross-action included ongoing discovery and Plains Marketing's refusal to produce its witnesses for deposition. Reynolds Energy's response to the motion for summary judgment asserted such events. Section 10.001(3) specifically provides that the conduct is not sanctionable if alleged facts "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3). Therefore, it was reasonable

for Reynolds Energy to oppose the motion for summary judgment and file the cross-claim based on the facts available to it at the time Bair and Johnson signed those documents.

As we previously concluded, there is no evidence to support a finding that Bair filed the response and Johnson filed the cross-action in bad faith, for an improper motive, or that these documents were groundless and brought for harassing or delay purposes. Accordingly, there is legally insufficient evidence to support the trial court's finding that Appellants violated Rule 13.

> Finding 7: *Reynolds Energy's Former Attorney Signed Pleadings and Discovery Repeating a Claim that Reynolds had Identified Drivers and Documents that Would Support Their Claims and References to False Statement by Thigpen*

The trial court's seventh finding reads in its entirety as follows:

7.       Additionally, REYNOLDS counsel signed pleadings and discovery repeating a claim that REYNOLDS had identified drivers and documents that would support the false claims they were asserting against PLAINS but never produced either. For example, when REYNOLDS claimed that its drivers had submitted reports that the vapor recovery system at PLAINS never worked, REYNOLDS'[s] manager Thigpen, who signed the discovery, had to testify that there were no such reports. REYNOLDS knew there were no such reports when this false statement was made as PLAINS had produced all of its station logs showing that no driver had experienced such a problem. Thereafter, REYNOLDS and its counsel continued to assert this claim in pleadings and responses to discovery, which forced PLAINS to file its first Motion for Summary Judgment which only REYNOLDS opposed. The Court finds, based on REYNOLDS'[s] own admissions, that counsel signed these amended pleadings knowing that this claim lacked a legal basis. Sanctions against REYNOLDS are appropriate under Section 10.001(2) and Rule 13 for continuing to assert a claim that was acknowledged as lacking merit.

The only pleadings and discovery Appellees challenged in its sanctions motion were Reynolds Energy's response to Plains Marketing's no-evidence motion for summary judgment, the April 27, 2020 cross-action, and its third amended answers to Interrogatory No. 3. Accordingly, the trial court was not authorized to include all of Appellants' pleadings and discovery in Finding 7. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at

513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

The trial court's finding that sanctions against Appellants are appropriate under section 10.001(2) is unfounded. Section 10.001(2) provides that a "claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2). But Chapter 10 expressly prohibits monetary sanctions against a represented party based on the legal contentions in a pleading. *Id.* § 10.004(d) ("The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)."). Accordingly, the trial court could not have properly awarded sanctions against Appellants for a groundless response to Plains Marketing's motion for summary judgment, the April 27, 2020 cross-action, or the third amended answers to Interrogatory No. 3.

Sanctions under Rule 13 are also not appropriate. The trial court's reliance on Manager Thigpen's deposition is unfounded. Thigpen's deposition was not introduced at the sanctions hearing and was not included as an exhibit in Appellees' motion for sanctions. More importantly, his testimony was not challenged by Appellees in their motion for sanctions. Therefore, the trial court was not authorized to rely on Thigpen's deposition testimony to support its Rule 13 sanction. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

As to the discovery signed by Thigpen and Appellants' admissions, the only discovery in evidence signed by Thigpen and the only admissions made by Appellants were dated more than eight months after Appellants' then-attorneys signed the third amended answers to Interrogatory No. 3, the response to Plains Marketing's motion for summary judgment, and the April 27, 2020 cross-action. We previously concluded that such responses were not evidence of the circumstances

surrounding the time the challenged documents were signed. As stated, at the time Bair and Johnson signed the challenged documents, discovery was ongoing, and Plains Marketing had refused to produce its employees for depositions.

We conclude that the evidence is legally insufficient to support Rule 13 sanctions against Appellants. The evidence of the circumstances surrounding the signing of the three challenged documents fail to show that reliance on driver reports was groundless at that time and that Appellants acted in bad faith or for harassing purposes.

> *Finding 8:*     *Failure to Investigate Regarding Its Assertion that Plains Failed to Comply with OSHA Standards Regarding the Rail at the Loading Site and Finding that There Is No Relevant OSHA Standard*

The trial court's eighth finding reads in its entirety as follows:

> 8.      Reynolds failed to investigate the law and the facts concerning REYNOLDS'[s] on-going assertion that PLAINS failed to comply with OSHA standards with regard to the dimensions of its guardrail and continued to make this claim even though (1) there was no guardrail at the PLAINS' station and (2) there is no OSHA standard, including the standard improperly cited by REYNOLDS, that applied to the PLAINS' station. Again, sanctions against REYNOLDS are appropriate under section 10.001(2) and Rule 13.

As we stated above, Chapter 10 expressly prohibits monetary sanctions against a represented party based on the legal contentions in a pleading. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(d). Therefore, the trial court could not have properly awarded sanctions against Appellants for a groundless response to Plains Marketing's motion for summary judgment or the April 27, 2020 cross-action for a violation of section 10.001(2).

Sanctions under Rule 13 are also not appropriate. We previously determined that Bair's legal theory against Plains based on guardrails not complying with OSHA standards was not groundless. We conclude the evidence was legally insufficient to support Rule 13 sanctions against Appellants.

*Finding 9:     Reynolds Failed to Investigate its Allegations that the Vapor Recovery System was Blocked by Mud and that the Design of the Site was Defective for Failing to Provide Storage for the Hoses*

The trial court's ninth finding reads in its entirety as follows:

9.      REYNOLDS failed to investigate the law and the facts concerning REYNOLDS'[s] claim that the vapor recovery hose was blocked by mud, rocks and other debris, rendering its use impossible.  Hayes, REYNOLDS'[s] own driver, extolled this claim but admitted that he had not examined the hose and had no evidence of such a blockage.  Yet REYNOLDS claimed that PLAINS failed to provide a storage rack for the hose to keep it out of the mud.  Not only do such storage racks not exist, the testimony of REYNOLDS'[s] own drivers was that the hoses were hung over the LACT unit when use was completed.  REYNOLDS own handbook made the care and storage of PLAINS' property the responsibility of their drivers.  Sanctions against REYNOLDS are appropriate under section 10.001(2) and Rule 13.

Finding 9 fails to identify the pleadings or discovery challenged.  Therefore, Finding 9 lacks the particularity requirement of Rule 13 and the explanation requirement of section 10.005.  *See* TEX. R. CIV. P. 13; TEX. CIV. PRAC. & REM. CODE ANN. § 10.005.

Finding 9 also is not legally appropriate because, as we stated above, Chapter 10 expressly prohibits monetary sanctions against a represented party based on the legal contentions in a pleading.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(d).  Therefore, the trial court could not have properly awarded sanctions against Appellants for a groundless response to Plains Marketing's motion for summary judgment, the April 27, 2020 cross-action, or the third amended answers to Interrogatory No. 3 for a violation of section 10.001(2).

Sanctions under Rule 13 are also not appropriate.  The record shows that Hayes's only admissions regarding the blocked hose were in his responses to requests for admission, which we previously ruled were not evidence of the circumstances surrounding the signing of Reynolds Energy's response to Plains Marketing's motion for summary judgment.  They were presented more than a year after Bair filed Reynolds Energy's response to the motion for summary judgment and the third amended answers to Interrogatory No. 3, and Johnson filed the April 27, 2020 cross-

action. We previously concluded that these later admissions were not evidence of the circumstances surrounding the signing of the challenged documents.

We also previously concluded that Hayes's testimony that the hoses were clogged was not groundless. Therefore, we conclude that Rule 13 was not violated.

We conclude that the trial court's award of sanctions under Rule 13 against Appellants was not supported by legally sufficient evidence. We also conclude that the trial court was without authority to award sanctions against Appellants under section 10.001(2) of the Texas Civil Practice and Remedies Code.

> *Finding 10:* *Testimony that the Hoses Might be Blocked by Mud and Other Debris, Findings that Plains Gave Reynolds Records from the National Weather Service Which Refuted Claims that Mud Could be Clogging the Hoses, or They Could be Blocked*

The trial court's tenth finding reads in its entirety as follows:

> 10. Despite REYNOLDS'[s] own admissions contradicting the presence of vapor recovery hose blocked by mud, rocks and other debris, REYNOLDS continued to assert this claim. As further evidence that REYNOLDS failed to investigate the law and the facts regarding this claim, REYNOLDS was given records in January 2020 [from] the National Weather Service that, from October 1, 2018 through the date of the incident, only 15/100th of an inch of rain had fallen at the PLAINS' station. Neither REYNOLDS'[s] manager nor its drivers could provide any support as to how mud could accumulate when there was virtually no water, nor could they explain how some 60 trucks a day, for more than two years, successfully filled their rigs and only Mr. Hayes experienced such an alleged clog. By signing pleadings and discovery making allegations that lacked any factual support, REYNOLDS and its counsel violated both Rule 13 of the Rules of Procedure and Chapter 10 of the Civil Practice and Remedies Code, justifying sanctions.

In Finding 10, the trial court again considers Appellants' "own admissions contradicting the presence of vapor recovery hose blocked by mud, rocks and other debris" that Appellants "*continued to assert*." In their sanctions motion, Appellees only challenged the response to the motion for summary judgment, the answers to Interrogatory No. 3, and the April 27, 2020 cross-action. Therefore, the trial court was without authority to consider any other document where

Appellants allegedly continued to assert the same claim. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

Finding 10 also references "admissions." We previously concluded that Hayes and Reynolds Energy's subsequent responses to requests for admission, which were served over a year after the former attorney signed the documents challenged by Plains Marketing, were not evidence of the circumstances surrounding the signing of the challenged documents.

Finding 10 also references "Reynolds'[s] Manager and its drivers." At the time the challenged documents were filed, only three witnesses had been deposed: Mills, Hayes, and Guerra. Reynolds Energy's manager and other drivers had not been deposed. As we have repeatedly stated and concluded, the circumstances surrounding the signing of the challenged documents showed that discovery was ongoing and that Appellees had refused to present their witnesses for deposition. Therefore, only the deposition testimony of Mills, Hayes, and Guerra are relevant to the issue of ventilation hoses being blocked by mud, rocks, or other debris.

In Finding 10, the trial court awarded sanctions under Chapter 10 against Appellants for signing pleadings and discovery. Sanctions under Chapter 10 are only proper for pleadings and motions. Therefore, by including discovery in its finding, the trial court acted outside its authority. *See In re Champagne*, 2021 WL 4976719, at *2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

We previously concluded that Hayes's testimony on clogged vent hoses was not groundless based on the following evidence: (a) Guerra's and Mills's deposition testimony, (b) the weather report, and (c) the station logs. Therefore, section 10.001 of the Texas Civil Practice and Remedies Code was not violated at the time Bair filed Reynolds Energy's third amended answers to Interrogatory No. 3 and Reynolds Energy's response to Plains Marketing's no-evidence motion

for summary judgment, and Johnson filed Reynolds Energy's April 27, 2020 cross-action. There being no evidence of Bair's or Johnson's bad faith or harassing, for the same reasons, Rule 13 was also not violated.

> *Finding 11: Findings Relating to the Affidavit of Reynolds Energy's Expert that Court Found to be a Sham Affidavit*

The trial court's eleventh finding reads in its entirety as follows:

> 11. REYNOLDS'[s] failure to make a reasonable inquiry into the facts underlying this lawsuit, coupled with the multiple false declarations REYNOLDS[] and its expert swore out in support of their pleadings, caused the Court to deny PLAINS' Motion for Summary Judgment. REYNOLDS submitted a sham affidavit from REYNOLDS'[s] engineering expert, Gehse, whose opinions had no evidentiary foundation. Rather than correct the false and misleading claims in subsequent pleadings and discovery, REYNOLDS forfeited the opportunity to cure the harm caused by REYNOLDS and its expert and continued to assert the untrue claims—claims that the Court finds by the evidence that REYNOLDS knew to be groundless and false when made. By signing the discovery responses, REYNOLDS certified that, to the best of its knowledge, information, and belief, the factual contentions therein were true. As discussed, a "reasonable inquiry" into these factual assertions would have proven otherwise.

Finding 11 lacks the particularity requirement of Rule 13 and the explanation requirement of Chapter 10 for four reasons: (1) it fails to notify Appellants under what rule they are being sanctioned, (2) it fails to identify the document in which Reynolds Energy swore to in support of their pleadings, (3) it fails to identify the discovery responses that Appellants signed, and (4) it fails to identify the "subsequent pleadings and discovery." In their sanctions motion, the only discovery Appellees challenged was Reynolds Energy's third amended answers to Interrogatory No. 3. Accordingly, the trial court was not authorized to include all of Appellants' discovery responses and subsequent pleadings in Finding 11.

As to Gehse's affidavit, the record before us does not show it was produced with Reynolds Energy's third amended answers to Interrogatory No. 3. Therefore, the trial court's finding that

Reynolds Energy should be sanctioned for filing the third amended answers to Interrogatory No. 3 is without factual support.

*Finding 12: Findings That Sanctionable Conduct Prolonged the Litigation*

The trial court's twelfth finding reads in its entirety as follows:

12.      This sanctionable conduct inappropriately prolonged the litigation.  As a result, PLAINS incurred more than $428,895.92 in documented attorneys' fees to compel the production of evidence, to independently secure such evidence when REYNOLDS failed its duty to produce same and to ultimately obtain summary judgment.  REYNOLDS'[s] new counsel would not stand on the unmeritorious claims and defenses REYNOLDS had previously asserted.  This Court reviewed testimony, pleadings and exhibits from the Plaintiff's counsel stating that there was no evidence supporting REYNOLDS'[s] claims against PLAINS and that PLAINS would never have been named as a Defendant in the case had REYNOLDS not claimed on the very night of the accident, without inspection or investigation, of its intent to blame PLAINS.  The Court finds that REYNOLDS'[s] violation of Rule 13 and Chapter 10 resulted in PLAINS being forced to incur legal fees and costs long after it was apparent in January 2020 that PLAINS never belonged in this litigation.  The Court finds that the difference between what PLAINS would have incurred in legal fees and costs if REYNOLDS had been truthful and what PLAINS was forced to spend in legal fees because of REYNOLDS'[s] false allegations and groundless claims is the appropriate measure of sanctions on these facts.

The trial court's finding that Reynolds failed its duty to produce evidence was not raised in Appellees' sanctions motion.  Therefore, the trial court was without authority to make this finding.

The trial court's finding that "REYNOLDS'[s] new counsel would not stand on the unmeritorious claims and defenses REYNOLDS had previously asserted" is not legally supported by the evidence.  First, the Reynolds' defendants' new counsel did not testify at the sanctions motion.  Second, the only evidence submitted by Appellees in support of this finding was an e-mail where new counsel agreed not to challenge a second motion for summary judgment.  Nothing in that e-mail stated that new counsel "would not stand on the unmeritorious claims and defenses" Reynolds Energy asserted.

Further, we previously concluded that the e-mail did not reflect the circumstances surrounding the signing of the three documents Appellees challenged in their sanctions motion. For these reasons, the trial court's findings are legally insufficient.

The trial court's review of Plaintiff's testimony, pleadings, and exhibits stating that there was no evidence supporting Reynolds Energy's claims against the Plains companies was also without authority. Plaintiff did not testify at the sanctions hearing. The only evidence introduced by Appellees in support of their sanctions motion were Dianna's first and second amended petitions and her response to Plains Marketing's motion for summary judgment. We previously concluded these documents were not evidence. Therefore, the trial court's finding that Reynolds Energy violated Rule 13 and Chapter 10 based on such documents is legally insufficient.

The trial court's finding that it was apparent that in January 2020 that Plains Marketing began to incur fees and costs because of Reynolds Energy's violations of Rule 13 and Chapter 10 lacks the particularity requirement of Rule 13 and the explanation requirement of Chapter 10. The finding does not specify what event in January 2020 triggered the alleged violations of Rule 13 and Chapter 10. Therefore, we conclude the trial court's Finding 12 was conclusory.

*Finding 13: Findings About the Lawsuit's Reliance on "Demonstrably False Claims"*

The trial court's thirteenth finding reads in its entirety as follows:

13.     Good cause exists to impose sanctions because this entire lawsuit involving PLAINS was premised on a series of demonstrably false claims, and it was filed to harass PLAINS and to unnecessarily delay the case and increase the costs of litigation. The Court finds that a reasonable inquiry of its own witnesses and documents in REYNOLDS'[s] possession would have shown there was no factual basis for the claims and defenses that REYNOLDS made in this lawsuit against Plains. The Court further finds that REYNOLDS failed to make reasonable inquiries into the factual basis for the claims and defenses asserted and on which they would bear the burden of proof for the April 2020 counter-claim they filed against PLAINS and their defense of contributory negligence. None of the nine contentions asserted by REYNOLDS in discovery in April 2020 had evidentiary support (apart from the uncorroborated, solicited and contradicted testimony offered by REYNOLDS'[s] officer Thigpen and its drivers) or could have been

- 77 -

shown to have truthful evidentiary support. REYNOLDS'[s] RESPONSE opposing PLAINS' first Motion for Summary Judgment was thus without merit, spurious, and brought in bad faith. This Court therefore concludes that REYNOLDS'[s] cross-claims and discovery allegations against PLAINS were brought for improper purposes, including harassment of PLAINS for exercising its legitimate rights and as actions which needlessly increased the costs of litigation. Sanctions are therefore appropriate against REYNOLDS under Section 10.001(1) of the Civil Practice and Remedies Code for presenting pleadings for an improper purpose.

In their sanctions motion, Appellees contended the cross-claim signed by Johnson was frivolous and malicious and filed in contravention of Rule 13 because it was based on false allegations. Accordingly, the trial court was without authority to order sanctions under section 10.001(1).

*Finding 14: Findings that Reynolds Failed to Exercise Due Diligence by Involving Plains in the Lawsuit*

The trial court's fourteenth finding reads in its entirety as follows:

14. Reynolds failed to exercise due diligence in involving Plains in this lawsuit. Because REYNOLDS'[s] involving Plains was premised on a series of demonstrably false statements, the Court concludes that its claims and defenses were without merit. Likewise, the lack of merit underlying REYNOLDS's claims demonstrates that REYNOLDS failed to investigate either the law or the facts before advising Plaintiff of its intent to assert its false claims. REYNOLDS also ignored the meritless nature of REYNOLDS'[s] claims even after their many falsehoods came to light, continuing to litigate the case as if no false testimony had been offered by Hayes at his first deposition in January 2020. REYNOLDS'[s] failure to exercise due diligence is sanctionable under Section 10.002(c) of the Civil Practice and Remedies Code, which provides that a Court may award a party prevailing on a sanctions motion all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

The trial court's conclusion that Reynolds Energy's claims and defenses were without merit fails to identify the pleading where Reynolds Energy asserted claims and defenses. The only pleading challenged by Appellants where claims and defenses were set forth is Reynolds Energy's April 27, 2020 cross-action. Therefore, the trial court erred in including any other pleading that contains Reynolds Energy's claims and defenses. *See In re Champagne*, 2021 WL 4976719, at

*2; *Clark*, 217 S.W.3d at 513; *In re L.A.M. & Assocs.*, 975 S.W.2d at 83; *see also Polansky*, 393 S.W.3d at 369; *Greene*, 174 S.W.3d at 298–301.

In their sanctions motion, Appellees contended the cross-claim signed by Johnson was frivolous and malicious and filed in contravention of Rule 13 because it was based on false allegations.

We previously concluded that Reynolds Energy's April 27, 2020 cross-action against Plains Marketing was not groundless and that there was no legally sufficient evidence that Johnson acted in bad faith or for harassing purposes.

The trial court's finding does not identify Hayes's false testimony at his January 28, 2020 deposition. Moreover, as stated previously, there is no evidence that Reynolds Energy or its former attorneys had knowledge of any false testimony when they signed the four documents challenged in the Plains companies' motion for sanctions. Finally, there is no evidence that Reynolds Energy failed to exercise due diligence with respect to the challenged documents. The trial court's finding that Reynolds Energy failed to exercise due diligence by involving the Plains companies in the lawsuit is not supported by the evidence.

*Finding 15: Reynolds and Its Counsel Acted Together and Intentionally*

The trial court's fifteenth finding reads in its entirety as follows:

15.    This Court finds that REYNOLDS and its counsel acted together and intentionally, causing PLAINS to incur needless attorney's fees and costs in defending against REYNOLDS's claims and prosecuting its own claims against REYNOLDS.

The trial court's finding fails because (a) it is not part of Plains Marketing's challenges in its sanctions motion, (b) the finding is not limited to the documents challenged by the Plains companies, and (c) there is no evidence to support the finding of the intentional state of mind of Reynolds Energy and its former attorneys. Accordingly, the trial court acted without authority.

*Finding 16: Reynolds Wasted Plains' Time and Resources and the Court's Time and Resources*

The trial court's sixteenth finding reads in its entirety as follows:

16.    As a result of the conduct described above, REYNOLDS wasted PLAINS' time and resources and also wasted this Court's time and resources.

We interpret this finding to include each of the trial court's prior findings. Because we concluded that either the trial court did not have authority to make its prior finding or there was no legally sufficient evidence to support them, we conclude that the trial court's Finding 16 was an abuse of discretion.

*Finding 17: A Direct Relationship Between the Sanctions and the Offending Conduct, Reference to False and Misleading Allegations in Reynolds's Petition and Motions*

The trial court's seventeenth finding reads in its entirety as follows:

17.    The Court finds that these sanctions are just, appropriate, necessary, and limited to an amount sufficient to deter similar misconduct by REYNOLDS and other who learn of this Order.  There is a direct relationship between the sanctions and REYNOLDS['s] offensive conduct.   Due to the frivolous claims of REYNOLDS'[s] cross-claims, PLAINS was forced to incur more than $428,89592 [sic] in legal fees and costs that it would have not incurred but for the many false and misleading allegations made by REYNOLDS in their petitions and motions. PLAINS produced evidence to show that it incurred the cost to retain additional counsel to represent the Guard company that employed [Dianna], to respond to the frivolous pleadings and to engage in extensive discovery practice, including the production of their employees both in and out of state for lengthy depositions.

Because we previously concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions.

*Finding 18: Knowingly Presenting Groundless Claims and Bad Faith*

The trial court's eighteenth finding reads in its entirety as follows:

18.     Among the factors considered by this Court in arriving at the appropriate amount of the sanctions were the demonstrated bad faith of REYNOLDS in knowingly presenting groundless claims, the reasonableness and necessity of the legal fees and expenses incurred by PLAINS as a result of REYNOLDS['s] violations of Rule 13 and Chapter 10, the burdens on the court system attributable to the misconduct, including consumption of the Court's resources, and the degree of willfulness in the repeated false statements that REYNOLDS offered to the Court.

Because we previously concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions.

*Finding 19: Suborning Perjury and "Repeatedly" Presenting the Trial Court with False Statements and "Untrue Declarations"*

The trial court's nineteenth finding reads in its entirety as follows:

19.     The sanctions imposed by this Court are limited to what the Court has determined is sufficient to deter repetition of REYNOLDS'[s] misconduct or comparable conduct by others similarly situated.  REYNOLDS'[s] violations of Chapter 10 and Rule 13 described above forced PLAINS to needlessly defend itself in a lawsuit in which there were no real controversies, either in law or in fact, Moreover, despite overwhelming evidence to the contrary, this court does not find that REYNOLDS has demonstrated any remorse for suborning false statements from its witnesses, much less acknowledged that they repeatedly have presented this Court with untrue declarations in their pleadings and motions and discovery throughout the litigation.  Therefore, this sanction is not arbitrary but is more than appropriate, given the harm suffered by PLAINS and the deterrent effect this sanction may have on REYNOLDS going forward.

Because we previously concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions.

*Finding 20:   Evidence Showing that Reynolds Endorsed or Encouraged Its Counsel's Actions*

The trial court's twentieth finding reads in its entirety as follows:

20.      The court observes that the sanctions are permissible and appropriate as against REYNOLDS as permitted under the Rules and that the evidence shows that REYNOLDS endorsed, encouraged, ratified and otherwise cooperated fully in the actions of Bair without basis, evidence or support therefore.

Because we previously concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions.

*Finding 21:   The Reasonableness of the Sanctions*

The trial court's twenty-first finding reads in its entirety as follows:

20.      The sanctions imposed hereunder are intended both to reimburse PLAINS for having to incur unnecessary attorney's fees and costs and to deter similar misconduct by REYNOLDS in the future.  This sanction is no more severe than necessary to promote full compliance with the Texas Rule[s] of Civil Procedure.

Because we previously concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions.

*Finding 1:    The Trial Court Awards Sanctions for Conduct Starting February 1, 2020*

The trial court's first finding reads in its entirety as follows:

1.      The Court awards sanctions to PLAINS against REYNOLDS for violations of Rule 13 of the Texas Rules of Civil Procedure ("Rule 13") and Chapter 10 of the Texas Civil Practice and Remedies Code ("Chapter 10"), in the amount of $428,895.92 (Four Hundred Twenty-Eight and Eight Hundred and Ninety-Five and 92/100 Dollars[)] which number was calculated from February 1, 2020, which date the documents reflect REYNOLDS'[s] unsupported frivolous and unmeritorious claims against PLAINS.  The court finds that the evidence documents that PLAINS incurred fees and costs from December 2018 (when [Dianna] was injured) through

the date of this order but PLAINS seeks recovery from February 2020 (when the pleadings and discovery clearly document REYNOLDS'[s] knowledge that their claims against PLAINS were unmeritorious) through present. As such, good cause exists to impose these sanctions from that date, as explained below.

Because we concluded that neither Reynolds Energy nor its former attorneys violated Rule 13 or section 10.001 as alleged by Appellees in their motion for sanctions, we conclude that the trial court abused its discretion by finding that the Plains companies were entitled to sanctions. We also conclude that the trial court abused its discretion by setting a time frame for the sanctions, which had no evidentiary support.

## CONCLUSIONS

We conclude the trial court abused its discretion by basing its findings on either (a) an erroneous view of the law or (b) legally insufficient evidence, in the following particulars:

1. By imposing sanctions on Reynolds Transportation, Inc. when it was not a party when the challenged documents were filed.

2. By awarding sanctions to Plains All American Pipeline, L.P. and Plains Pipeline, L.P. when they were not parties when the challenged documents were filed.

3. By imposing sanctions on Appellants for violations of Rule 13 where evidence of bad faith or harassment was legally insufficient.

4. In its Findings 2, 3, 6, 7, 9, 10, 11, 14, and 15, by imposing sanctions on pleadings or documents not challenged in the sanctions motion, in violation of Appellants' due process rights.

5. In its Findings 4 and 7, by relying on evidence not introduced at the hearing and not included in Appellees' motion for sanctions.

6. In its Findings 13 and 14, by imposing sanctions under Chapter 10 when in their motion for sanctions, Appellees only asked for sanctions under Rule 13.

7. In its Findings 3, 10, and 11, by imposing sanctions for statements or documents not included in Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3, Reynolds Energy's response to Plains Marketing's motion for summary judgment, or Reynolds Energy's and Hayes's April 27, 2020 cross-action against Plains Marketing.

8. In its Findings 3 and 6, by making findings not supported by legally sufficient evidence.

9. In Finding 6, by considering the statements contained in Dianna's pleadings as evidence that Reynolds Energy's violated of Chapter 10 and Rule 13.

10. In its Findings 2, 3, 6, 7, 9, 10, and 11, by not limiting its review to circumstances surrounding Bair's or Johnson's filings of the documents challenged in the Plains companies' motion for sanctions.

11. In its Findings 2, 4, 9, 10, 11, and 14, by failing to describe with reasonable particularity the conduct that violated Rule 13 and to explain such conduct as required under Chapter 10.

12. In its Findings 3, 5, and 10, by sanctioning Appellants under Chapter 10 for Reynolds Energy's third amended answers to Dianna's Interrogatory No. 3, when Chapter 10 only applies to pleadings and motions.

13. In its Findings 7 and 8, by imposing sanctions against Appellants for violations of section 10.001(2) given that section 10.004(d) prohibits sanctions against a represented party for violation of section 10.001(2).

14. In its Finding 16, by concluding that Appellants wasted the Court's and Appellees' resources where (1) the evidence was legally insufficient, (2) the sanctions were based on documents not raised in the motion for sanctions, or (3) the sanctions were not based on the circumstances surrounding the signing of the challenged documents.

15. In its Findings 17, 18, 19, 20, and 21, by finding that Plains was entitled to sanctions.

We conclude the trial court abused its discretion as stated above and by ordering sanctions under either Rule 13 or Chapter 10, or both, against Appellants. Accordingly, we reverse the trial court's order, and we render judgment that Appellees take nothing on their motion for sanctions.

Reynolds Energy's arguments that the trial court abused its discretion (1) by not granting the Reynolds companies' motion to reconsider and (2) by awarding sanctions not supported by legally or factually sufficient evidence are moot.

We tax costs of court for this appeal against Appellees.

Patricia O. Alvarez, Justice